Elizabeth A. MARTINI, Plaintiff,

v.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION, et al.,** Defendants.

**Civil Action No. 95–1341(GK).**

United States District Court, District of Columbia.

Sept. 10, 1997.

David E. Schreiber, Larry S. Greenberg, Bethesda, MD, for Plaintiff.

Sharon A. Cummings, Eric S. Jackson, Robins, Kaplan, Miller & Ciresi, Washington, DC, for Defendants.

## MEMORANDUM OPINION

KESSLER, District Judge.

This matter is before the court on Plaintiff's Motion for Attorney Fees and Costs [# 116] pursuant to 42 U.S.C. § 2000e–5(d) and D.C.Code § 1–2556. Between November 18 and December 9, 1996, Plaintiff's gender-based discrimination and retaliation claims under Title VII of the Civil Rights Act, as *amended*, 42 U.S.C. § 2000e *et seq.*, and the District of Columbia Human Rights Act, D.C.Code § 1–2501 *et seq.*, were tried before a jury in this Court. On December 12, 1996, the jury rendered a verdict for Plaintiff on her claims. She now seeks attorneys' fees and costs associated with the suit and the preparation of her fee petition. Upon consideration of the Motion, the Opposition thereto, the Reply, the applicable case law, and the entire record herein, the Court concludes that Plaintiff's Motion must be **granted**.

### I. Background

Plaintiff Elizabeth A. Martini was employed by Defendant Federal National Mortgage Association ("Fannie Mae") from July 1988 until March 8, 1995, when she received a termination notice. On July 20, 1995, Plaintiff filed an action in this Court alleging harassment, retaliation, negligent infliction of emotional distress, intentional infliction of emotional distress and negligent supervision. Plaintiff brought her harassment and retaliation claims pursuant to Title VII. On May 3, 1996, the Court granted, over Defendants' opposition, Plaintiff's motion for leave to amend her Complaint to bring claims for harassment and retaliation under the D.C. Human Rights Act.

On July 10, 1997, the Court granted Defendants' Motion to Dismiss Plaintiff's Title VII claims against Defendants Knight and Kobayashi because neither could be held individually liable under Title VII. On August 19, 1996, the Court granted Defendants' Motion for Summary Judgment with respect to Plaintiff's common law tort claims. Defendants also moved to dismiss Plaintiff's D.C. Human Rights Act claims against Defendants Knight and Kobayashi on the grounds that those Defendants could not be held individually liable under the statute. On October 30, 1997, the Court denied Defendants' Motion.

Between November 18 and December 9, 1996, Plaintiff's remaining claims were tried before a jury in this Court. Defendants renewed their Motion to Dismiss the D.C. Human Rights Act claims with respect to the individual Defendants on November 19, 1996, which motion was denied by the Court on December 2, 1996. At the close of Plaintiff's case and again at the close of all evidence, Defendants moved, pursuant to Fed.R.Civ.P. 50, for judgment as a matter of law. The Court denied Defendants' motions. On December 12, 1996, the jury rendered a total verdict of $6,948,370.40 in favor of Plaintiff. Judgment on the Verdict was entered on December 16, 1996.

Plaintiff filed the instant motion on December 30, 1996. She seeks attorneys' fees for 780 hours of work by attorney David E. Schreiber and 594.7 hours of work by attorney Larry S. Greenberg and more than $21,000 in costs associated with litigating this case.

### II. Analysis

■ Our Court of Appeals requires a three-part analysis for attorneys' fees decisions: "(1) determination of the number of hours reasonably expended in litigation; (2) determination of a reasonable hourly rate or 'lodestar'; and (3) the use of multipliers as merited." *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C.Cir.1995), *cert. denied*, — U.S. —, 116 S.Ct. 916, 133 L.Ed.2d 847 (1996) (quoting *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1517 (D.C.Cir.1988)) (internal quotations omitted). Here, Plaintiff has, as required by *Hensley v. Eckerhart*, 461 U.S. 424, 432, 103 S.Ct. 1933, 1938–39, 76 L.Ed.2d 40 (1983), "submit[ted] evidence supporting the hours worked and rates claimed."

Defendants oppose the fee application on several grounds: (1) that the hourly rates requested by Plaintiff are excessive and unreasonable; (2) that the number of hours claimed by Plaintiff is not reasonable; and (3) that Plaintiff did not prevail on all of her

claims.[1] Further, they oppose Plaintiff's request for costs to the extent that those costs are unspecified, unnecessary and excessive.

Before the Court proceeds to analyze Plaintiff's fee request in light of the prevailing legal principles, certain general comments need to be made. From the moment this case was filed, Defendants chose to litigate it in the most aggressive, hostile, and time-consuming fashion. Pleadings were invariably far too long. Arguments were repeated time after time after time. Lead defense counsel was uncooperative, engaged in personal attacks against opposing counsel, and magnified every minor legal issue into the proverbial "federal case". In time, sad to say, Plaintiff's counsel either adopted—or was driven to adopt—the same attitude and tactics. At a certain point in this case, given the lack of trust and civility amongst counsel and the history of unpleasant dealings, it became impossible to apportion blame on any single issue. It is against this background of uncivil and unprofessional conduct—which has proved to be so wasteful of the Court's time as well as counsel's—that the fee petition is examined.

The analysis of Plaintiff's request begins with consideration of the "initial estimate of a reasonable attorney's fee"—the so-called lodestar fee—which the Supreme Court has said "is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate based on the prevailing market rates in the relevant community." *Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 1544, 79 L.Ed.2d 891 (1984). Plaintiff's requested lodestar is $433,030.50, which she arrived at by multiplying the number of hours that both of her attorneys worked by the *Laffey* matrix fee of $315 per hour.[2] Defendants challenge both components of Plaintiff's lodestar calculation.

## A. Hourly Rates

■ An attorney's usual billing rate is presumptively deemed the reasonable rate, provided that this rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Kattan v. District of Columbia,* 995 F.2d 274, 278 (C.A.D.C.1993) (quoting *Blum,* 465 U.S. at 895–96 n. 11, 104 S.Ct. at 1547 n. 11.;) *see Cumberland,* 857 F.2d at 1518–1519. Under certain circumstances, our Court of Appeals has allowed the recovery of attorneys' fees at a higher rate than that customarily charged by the litigating attorney. However, to qualify for that higher rate, the fee petitioner must carry his or her burden of showing "at least three elements: the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community." *Covington,* 57 F.3d at 1107 (citing *Blum v. Stenson,* 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984); *Cumberland,* 857 F.2d at 1524). If that showing is made, the updated *Laffey* matrix provides the most generally accepted hourly rates for attorneys in this jurisdiction. *See Covington v. District of Columbia,* 839 F.Supp. 894, 898 (D.D.C.1993), *aff'd,* 57 F.3d 1101 (D.C.Cir. 1995); *Cumberland,* 857 F.2d at 1525; *Goos v. National Ass'n of Realtors,* 997 F.2d 1565 (D.C.Cir.1993).

■ Plaintiff requests that her lodestar fee be calculated using the rates in the current *Laffey* matrix. In support of her request, she has submitted affidavits from her

---

1. Defendants contend that Plaintiff's fee petition was untimely filed. This argument is completely without merit. While it is true that such a petition must be "filed and served no later than 14 days after entry of judgment", Fed.R.Civ.P. 54(d)(2), it is also true that a judgment is effective only when entered pursuant to Fed.R.Civ.P. 79(a). Fed.R.Civ.P. 58. Under Fed.R.Civ.P. 79(a), a judgment is entered on the day the docket entry is made. Since the Judgment on the Verdict was entered on December 16, 1996, Plaintiff's Motion, filed and served on December 30, 1996, was timely filed.

2. The so-called *"Laffey* matrix" is named for *Laffey v. Northwest Airlines, Inc.,* 572 F.Supp. 354, 371 (D.D.C.1983). That case set forth a methodology for determining the prevailing rates for attorneys who have different levels of experience. The *Laffey* methodology was subsequently approved by our Court of Appeals in *Cumberland, supra,* 857 F.2d at 1525. An updated *Laffey* matrix is maintained by the United States Attorney's Office for the purpose of determining appropriate rates for legal fees.

attorneys. Pl.'s Exs. 2, 3. Mr. Schreiber's affidavit fails to state what his customary billing rate is, but asks that the "reasonable value of [his] professional services ... be established at no less than $225.00 per hour." Pl.'s Ex. 2, ¶ 5. That is also the amount listed in Mr. Schreiber's contemporaneous billing records. Pl.'s Ex. 2. Mr. Greenberg's affidavit states that he has customarily charged his clients $175 per hour for the past two years. Pl.'s Ex. 3, ¶ 4.

Plaintiff requests an hourly rate of $315, the hourly rate set forth in the *Laffey* matrix for attorneys with more than 20 years experience, for each hour spent by each attorney litigating this matter. She claims that the customary billing rate charged by her counsel does not reflect the market rate of their services because both attorneys charge reduced rates for non-economic reasons. However, applying the *Covington* test, it is clear that Plaintiff has not adequately demonstrated the required elements which would entitle her to reimbursement at the higher, *Laffey* rate.

■ With respect to the first element, Plaintiff has submitted an affidavit from Mr. Schreiber stating that he charges below market rates because he provides "legal representation to disadvantaged lower and middle income individuals and families" and that he does this for non-economic reasons.[3] A determination of whether an attorney does indeed charge below-market rates for public interest reasons rests in the sound discretion of the district court and affidavits such as Mr. Schreiber's have been found to be sufficient for making such a finding. *Covington*, 57 F.3d at 1108, 1110 & n. 19. In light of Plaintiff's unrebutted evidence, the Court concludes that Mr. Schreiber does bill certain clients at below market rates and should not be "penalized for his public spiritedness by

being paid on a lower scale than either his higher priced fellow barrister from a more established firm or his salaried neighbor at a legal services clinic." *Cumberland*, 857 F.2d at 1524. Mr. Greenberg, however, does not claim to serve low-income people at below market rates. Thus, because Plaintiff cannot meet the first prong of the *Covington* test with respect to Mr. Greenberg, Plaintiff cannot show an entitlement to rates higher than his normal billing rates. *See Covington*, 57 F.3d at 1107–08.

Turning to the second element, Plaintiff has failed to carry her burden with respect to demonstrating Mr. Schreiber's experience, skill, reputation, and the complexity of this case. Even though Mr. Schreiber has practiced law for more than 25 years, Plaintiff has presented only the conclusory statement in her brief, with respect to his skill and reputation, that "[t]his Court is aware of the reputation of Mr. Schreiber with respect to his standing among the bench and bar of this jurisdiction."[4] Pl.'s Memo. at 11. That will not suffice. The Supreme Court requires evidence other than an attorney's personal affidavit, *Blum*, 465 U.S. at 896 n. 11, 104 S.Ct. at 1547 n. 11, and our Court of Appeals requires an attorney to prove, by other than his personal affidavit "[his] federal court experience in order to get *Laffey* rates." *Covington*, 57 F.3d at 1108 n. 17. Further, Plaintiff admits that her counsel had no special expertise in the area of employment discrimination law. Pl.'s Memo. at 11. Thus, Plaintiff has failed to prove, with respect to Mr. Schreiber, that he is entitled to rates above his regular billing rate.[5]

Mr. Greenberg's affidavit states that he has billed clients at the rate of $175 for the past two years. Mr. Schreiber's contemporaneous billing records show a billing rate of

---

3. There is no such statement in Mr. Greenberg's Affidavit.

4. For example, Plaintiff's counsel fails to provide any affidavits of other practicing attorneys attesting to his skill and experience. Nor does he present any detail about the types of cases he has handled or their complexity.

5. Because Plaintiff cannot meet the first two prongs of the *Covington* test with respect to ei-

ther counsel, the Court need not reach the issue of whether she has provided "specific evidence of the prevailing community rate for the type of work for which [she] seeks an award." *National Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1325 (D.C.Cir.1982). Plaintiff has simply failed to produce sufficient evidence and, thus, is not eligible for compensation at the rates set forth in the *Laffey* matrix.

$225.00 per hour. Those rates are well within the *Laffey* matrix for attorneys with their level of experience (more than 20 years) and are thus presumptively reasonable. *See Kattan,* 995 F.2d at 278.

## B. Time Expended

Plaintiff requests attorneys' fees for 780 hours of work by Mr. Schreiber and 594.7 hours of work by Mr. Greenberg. Defendants make several specific challenges to time spent by Plaintiff's counsel and attack their "good judgment" in billing for certain activities. The Court has made a careful review of the billing records of both attorneys and finds them to be adequate in order to determine whether fees should be awarded. *See Concerned Veterans,* 675 F.2d at 1332.

■■■ The touchstone inquiry is whether the time expended on particular tasks was reasonable. *Copeland v. Marshall,* 641 F.2d 880, 891 (D.C.Cir.1980). Parties cannot be reimbursed for nonproductive time or duplicative activities. *Id.* at 891, 902. However, "contests over fees should not be permitted to evolve into exhaustive trial-type proceedings." *Concerned Veterans,* 675 F.2d at 1324. The Court could not agree more with Judge Tamm's pronouncement that "nit-picking claims" should not be tolerated, *id.* at 1338 (Tamm, J., concurring), although Defendants have tried to pick as many nits as possible. Although the Court has carefully considered all of Defendant's claims, insignificant as some may be,[6] it will address only those specific challenges which raise significant issues.

### 1. Media Contact

■■ Defendants challenge time spent by Plaintiff's counsel contacting the media. Such time is not properly reimbursable. *See In re North (Gadd Fee Application),* 12 F.3d

252, 257 (D.C.Cir.1994). Thus, Mr. Greenberg's time will be reduced by .2 hours for a telephone call made to a *Washington Post* reporter on November 5, 1996, and Mr. Schreiber's time will be reduced by 1.63 hours for a similar call made on July 30, 1996, and 2.5 hours for a call made on November 5, 1996.

### 2. Depositions

■■ Defendants challenge the amount of time spent on and billed by Plaintiff's counsel for depositions. In particular, they object to Plaintiff having both counsel present at depositions when only one attorney took or defended the deposition.

This challenge is just another of the myriad examples in which Defendants' aggressive litigation strategy served to cost the client more than was necessary. Plaintiff did have two experienced attorneys present at her depositions. However, Defendants were represented at depositions by not only their two outside counsel but also by a third attorney from Fannie Mae's Office of Legal Counsel. Given the manner in which Defendants chose to litigate this case, and the manner in which they themselves staffed the case, there is nothing unreasonable about Plaintiff's use of two attorneys at each deposition.[7] While it is unfortunate that it is the client who will bear the cost, it was the client's counsel who chose to use three lawyers to handle each deposition. Plaintiff needed to ensure that she had equivalent legal resources representing her interests, and is, therefore, entitled to all of the hours claimed by her counsel with respect to depositions.

### 3. Pretrial Motions

Defendants contend that Plaintiff should not recover attorneys' fees for time expended in preparing unsuccessful, unfiled, or untimely motions. They request that Plaintiff's

---

**6.** Defendants' approach to this motion is well illustrated by their request that the Court reduce Mr. Greenberg's time by .3 hours for telephone calls made on August 9 and 10, 1995, to process servers. Service of process is an important step in the initiation of a lawsuit and is not, as Defendants' contend, merely a "clerical" task.

**7.** Defendants also challenge time spent on depositions to the extent that Mr. Schreiber and Mr. Greenberg spent different amounts of time on each deposition. They contend that this means that one counsel must have included travel time. No such inference can be drawn. Each attorney may simply have needed different amounts of time to prepare for or follow up on issues raised at a particular deposition.

request be reduced by 5.5 hours of Mr. Greenberg's time and 34.96 hours for Mr. Schreiber's time.

In general, time spent researching, drafting, and preparing unsuccessful motions is not compensable. *See Castle v. Bentsen*, 872 F.Supp. 1062, 1067 (D.D.C.1995). However, Plaintiff's Motion to Compel, although ultimately unsuccessful, was very significant to her case. The privilege issues raised were neither clear nor well settled. *See id.* It was precisely because Plaintiff had fought so hard pre-trial to obtain the Diversity Report and Defendants had fought so hard, and successfully, to hide it, that the Court did not, at trial, allow Defendants to introduce it. In that sense, Plaintiff's counsel was fully effective in protecting their client's interest. Thus, even though the Motion to Compel was unsuccessful *per se*, it was a motion which had to be litigated by plaintiff. Thus, Plaintiff is entitled to recover 34.96 hours of Mr. Schreiber's time to brief her Motion to Compel and Defendant's Cross–Motion for Protective Order.

Defendants also challenge hours expended on a Motion to Compel drafted by Mr. Greenberg in April 1996, but apparently not filed. Plaintiff has made no showing with respect to why that motion was not filed. Thus, the motion cannot be deemed to be "successful". Thus, the Court will strike 5.5 hours of Mr. Greenberg's time from Plaintiff's fee request.

Finally, Defendants request that all time spent preparing the Amended Complaint and the corresponding Motion for Leave to File an Amended Complaint be excluded from Plaintiff's request. They argue that those hours "should not have been spent at all", *Copeland v. Marshall*, 641 F.2d 880, 881 (D.C.Cir.1980)', because Plaintiff should have filed her D.C. Human Rights Act claims when she filed her initial Complaint. The Court does not agree and has ruled against Defendants on this issue on at least three prior occasions.

Plaintiffs in employment discrimination actions must often exhaust their administrative remedies before they are eligible to file a lawsuit asserting their claims. Those administrative processes may differ, as here, for various types of discrimination claims. Thus, it is not unreasonable for Plaintiff to have asserted her Title VII claims before she became eligible to assert her claims under the D.C. Human Rights Act. Defendants' request to reduce attorney time related to the filing of an Amended Complaint is denied.

Plaintiff's request for attorneys' fees for pre-trial motions will be reduced by 5.5 hours of Mr. Greenberg's time spent on the unfiled Motion to Compel.

### 4. Pretrial Statement

Plaintiff seeks reimbursement for 54 hours of Mr. Schreiber's time in preparing the Joint Pretrial Statement and 4.67 hours for time reviewing Defendants' Joint Pretrial Statement. Defendants contend that Plaintiff's for attorneys' fees in connection with preparation of the pretrial statement is excessive and unreasonable and should be reduced by 31.67 hours of Mr. Schreiber's time.

This Court's standard scheduling order was entered in this case on October 24, 1995. That order directed the parties to file a Joint Pretrial Statement and included the prescribed form to be followed. *See* Order of Oct. 24, 1995, ¶ 7 & App. A. The parties apparently experienced communication and scheduling difficulties in the preparation of the Joint Pretrial Statement, in no small part because they were briefing a Motion for Summary Judgment during the same time frame. *See* Defs.' August 5, 1996, Consent Motion for Enlargement of Time and exhibits thereto. In their Consent Motion, Defendants document the difficulties that they encountered in preparing the Joint Pretrial Statement.

The extreme acrimony between counsel surrounding the routine, albeit important, task of preparing a joint pretrial statement was one more example of the wasteful, inefficient manner in which all counsel litigated this case and the pettiness, hostility, and inability to cooperate on the most minor matters which came to dominate their professional relationships. By the time of the Pretrial Conference, relations had deteriorated so badly that it had become impossible to

sort out who was precisely responsible for the particular failure to work together on any particular phase of the case.

Reviewing the entire docket, and having read all the pleadings in this case, the Court concludes that it was unreasonable for Plaintiff to put in 58.67 hours preparing a Pretrial Statement and ·those hours will be reduced by 50%. Thus, Plaintiff's request will be reduced by a total of 29.3 hours of Mr. Schreiber's time.

### 5. Attorneys' Fees Motion

Plaintiff seeks attorneys' fees for 18 hours associated with preparing the fee request. Defendants contend that Plaintiff has improperly supported her motion and request that the compensable hours be reduced by one-third. As previously noted, Plaintiff's request is sufficiently detailed for the Court to determine the reasonableness of the number of hours spent on given litigation tasks. Thus, Defendants' contention is without merit and their request will be denied.

### 6. Common Law Tort Claims

■ Defendants argue that Plaintiff's request must be reduced substantially because she did not prevail on her claims for negligent supervision, negligent infliction of emotional distress, and intentional infliction of emotional distress.

Both the Supreme Court and our Court of Appeals have addressed, dispositively, this issue. *Hensley v. Eckerhart,* 461 U.S. 424, 432, 103 S.Ct. 1933, 1938–39, 76 L.Ed.2d 40 (1983); *Goos v. National Ass'n of Realtors,* 68 F.3d 1380 (D.C.Cir.1995).

The Supreme Court in *Hensley* addressed the problem of awarding attorneys' fees to a plaintiff who is deemed to have prevailed even though she succeeded on only some of her claims for relief. The Court recognized that "[i]n some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories" and that "[i]n other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories". 461 U.S. at 434, 103 S.Ct. at 1940. Under the second scenario,

[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the. hours reasonably expended on the litigation.

Where a plaintiff has obtained excellent results his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation ... In these circumstances, the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. *The result is what matters.*

*Id.* at 435, 103 S.Ct. at 1940 (emphasis added).

This is precisely the kind of case, involving related claims, alternative and/or· related legal theories, and a common nucleus of facts, to which the Supreme Court was referring. Given the entire factual context of this case, it would be impossible and artificial to segregate out, for example, those hours spent on legal research, factual investigation, and trial strategy related to the unsuccessful common law claims as opposed to those hours spent on legal research, factual investigation, and trial strategy related to the successful statutory discrimination and retaliation claims.

Plaintiff's various claims were interrelated and flowed from an extended set of facts, namely her course of employment with Fannie Mae. In order to litigate this case properly, counsel had to be familiar with all the facts related to Plaintiff's employment with Fannie Mae. As Judge Richey pointed out in *Noble v. Herrington,* 732 F.Supp. 114, 116–117 (D.D.C.1989) (footnote omitted): "Attorneys do not operate in a vacuum;" their conduct "is, more often than not, the product of several factors which include, but are not limited to, familiarization with the case as a

whole, planning overall case strategy, and client consultation. In this case, it is hard to attribute to particular claims the hours that [counsel] spent familiarizing themselves with the case, conferring with plaintiff, or planning overall case strategy. This is because of the interconnectedness of plaintiff's claims." These comments are particularly applicable to this case where *all* of Plaintiff's claims related to her employment history at Fannie Mae.

In *Goos, supra,* 68 F.3d at 1384, our Court of Appeals addressed the situation "where the plaintiff has advanced multiple claims based on the same core set of facts or related legal theories but has prevailed on only one." Emphasizing that "a plaintiff's failure to prevail on a related count is not in itself a sufficient ground for reducing her fees", the Court held that "[i]t is a plaintiff's overall success and not the number of counts she prevails on, that determines the amount of fees she is entitled to." *Id.*

Judge Wald, writing for the majority, emphasized that the "key question is whether the work was reasonably done in pursuit of the ultimate result." *Id.* at 1386. She summarized the majority position as follows:

> The upshot is that 'a plaintiff is not *automatically* entitled to all of her attorney's fees in a case in which she prevailed on some but not all claims.' *Hensley* by no means entitled plaintiffs to reimbursement of their entire fees if they pursue multifarious and marginal claims … However, a reduction is not appropriate if it is based solely on a plaintiff's failure to prevail on a related claim; the focus must be on whether the hours were reasonably expended in relation to the results obtained.

*Id.* at 1387 (emphasis in original) (citations and footnotes omitted).

Here, the "overall success" achieved by counsel was substantial. Plaintiff won a jury verdict of nearly $7 million on her discrimination and retaliation claims. Even with the application of the damage cap to Plaintiff's Title VII recovery, Plaintiff won a verdict of more than $2 million from the jury. Based upon the Court's examination of the fee application, and given the substantial success achieved by Plaintiff as well as the intercon-

nectedness of her claims, the Court concludes that "the hours were reasonably expended in relation to the results obtained."

It is time, as Defendants point out, that Plaintiff's Title VII claims required somewhat different proof than her common law claims. *See* Defs.' Opp'n at 27–28. Just as "litigation is not an exact science", *Goos,* 68 F.3d at 1386, neither is allocation of fees for successful results achieved. Given the Court's "broad discretion", *id.* at 1384, the applicable principles of law already discussed, and the entire record in this case, the Court concludes that a 15% reduction is a fair and reasonable adjustment of the fee request to reflect the hours expended on common law claims on which Plaintiff did not prevail.

## C. Costs

Plaintiff requests cost reimbursement of $21,111.64, attributable as follows:

| | |
|---|---|
| Duplication: | $1,677.33 |
| Postage: | $73.55 |
| Courier/Federal Express: | $198.86. |
| Filing Fees: | $120.00 |
| Facsimile: | $167.00 |
| Depositions: | $8,467.90 |
| Process Server: | $297.00 |
| Witness Attendance Fees: | $330.00 |
| Expert Witness Fees: | $9,780.00 |

Fed.R.Civ.P. 54(d) provides that "costs shall be allowed as of course to the prevailing party unless the court otherwise directs", and thus provides a strong presumption in favor awarding costs. *Sun Ship. Inc. v. Lehman,* 655 F.2d 1311, 1317 (D.C.Cir.1981). However, the costs must be "both reasonably incurred and reasonable in amount, given the progress of the case before this Court." *See Clark v. Marsh,* 609 F.Supp. 1028, 1035–36 (D.D.C.1985) (citing *Northcross v. Board of Educ. of Memphis City Schools,* 611 F.2d 624 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980)).

Defendants contend that the reasonableness of Plaintiff's costs cannot be ascertained because they are not adequately documented. Plaintiff's request is devoid of any explanation with respect to how costs were expended. Mr. Schreiber's off-hand state-

ment in his affidavit that the expenses were "necessary" is not sufficient. While Plaintiff's $120.00 filing fee, which is the standard fee for filing a case in the United States District Court for the District of Columbia, is obviously compensable, there is no documentary explanation, for example, of the $9,780 for expert witness fees or the $8,467.90 for depositions.

Thus, the request for costs will be denied without prejudice. Plaintiff shall have until September 19, 1997 to file an appropriate explanation and documentation of her cost request, at which time any other defense arguments relating to specific costs will be considered. *Accord, Palmer v. Barry,* 704 F.Supp. 296, 298 (D.D.C.1989); *Noble, supra,* 732 F.Supp. at 119.

### III. *Conclusion*

For the reasons discussed above, Plaintiff is entitled to reimbursement for 750.70 hours of Mr. Schreiber's time at $225.00 per hour and 584.87 hours of Mr. Greenberg's time at $175.00 per hour, with an overall fifteen-percent reduction to account for her lack of success on her common-law claims, for a total of $230,560.45 in fees.