BOARD OF TRUSTEES OF THE HO-
TEL AND RESTAURANT Employees
Local 25 and Employers' Health and
Welfare Fund, Board of Trustees of
the Hotel and Restaurant Employees
and Hotel Association, Cafeteria and
Other Subscribing Employers Dental
and Optical Care Funds, and Board of
Trustees of the Hotel and Restaurant
Employees Local 25 and Hotel Associ-
ation of Washington, D.C., Pension
Fund, Plaintiffs,

v.

The MADISON HOTEL,
INC., Defendant.

Civil Action No. 94–2483 SSH.

United States District Court,
District of Columbia.

March 22, 1999.

Ellen Ranzman, Katz & Ranzman, PC, Washington, DC, for plaintiff.

Jonathan Greenbaum, Washington, DC, for defendant.

## *OPINION*

STANLEY S. HARRIS, District Judge.

This matter is before the Court on plaintiffs' motion for ancillary relief, defendant's opposition thereto, plaintiffs' reply, and defendant's surreply. Upon consideration of the parties' submissions and the entire record, the Court grants in part and denies in part plaintiffs' motion.

## BACKGROUND

Plaintiffs are the boards of trustees of three multi-employer benefit plans ("the Funds") to which defendant, pursuant to a collective bargaining agreement, is obligated to contribute. This lawsuit arose when defendant violated an agreement executed by the parties in settlement of a previously-filed suit under the Employee Retirement Income Security Act of 1974 ("ERISA") and the National Labor Relations Act ("NLRA"). The settlement agreement provided that plaintiffs would conduct an audit of defendant and report any delinquent contributions. Defendant was required either to pay the contributions due or to provide notice of its wish to contest the audit results within thirty days of receiving them. Defendant did not meet this deadline, and on November 18, 1994, plaintiffs filed this suit alleging violations of §§ 502(a)(3) and 515 of the ERISA, 29 U.S.C. §§ 1132(a)(3) & 1145,

§ 301 of the NLRA, 29 U.S.C. § 185(a), and the settlement agreement.

Defendant filed a motion to dismiss or for summary judgment, contending that this Court does not have subject matter jurisdiction. The Court granted defendants' motion but the Court of Appeals disagreed, holding that this Court has independent subject matter jurisdiction because any enforcement of the settlement agreement requires an application of ERISA law, over which the federal courts exercise exclusive and preemptive jurisdiction. *See Board of Trustees of the Hotel and Restaurant Employees Local 25 v. Madison Hotel, Inc.*, 97 F.3d 1479, 1478–79 (D.C.Cir.1996).

On remand, plaintiffs filed a motion for partial summary judgment, arguing that defendant was liable for ancillary relief, including interest, liquidated damages, and attorney's fees and expenses, under § 502(g)(2) of the ERISA.[1] The Court granted plaintiffs' motion and directed the parties to file further briefing on the precise nature and amount of ancillary relief due. Those supplemental pleadings are now before the Court.

## DISCUSSION

Section 502(g)(2) of the ERISA provides in relevant part:

In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan— . . .

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of—

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A) [the unpaid contributions],

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132(g)(2). Pursuant to this section and the relevant trust agreements, plaintiffs seek $5,968.06 in interest, duplicate interest of $5,968.06 in lieu of liquidated damages, $243,876.25 in attorney's fees, and $2,818.32 in expenses.[2] Defendant objects to this relief, the Court addresses each objection in turn.

### I. *Interest*

 Plaintiffs request interest of $5,968.06. Defendant contends that plaintiffs' request is excessive because plaintiffs calculated the interest due from the date defendant became delinquent in its payments, rather than thirty days after defendant received plaintiffs' audit report (the time provided by the settlement agreement).[3] The Court again rejects defendant's suggestion that the settlement agreement limited plaintiffs' ability to ob-

---

1. Defendant had paid the delinquent contributions on February 28, 1995.

2. The amounts listed for attorney's fees and expenses reflect the original amount requested, $223,740 and $2,419, respectively, plus an additional $17,136.25 and $399.32, respectively, incurred in filing plaintiffs' reply to defendant's opposition to the request for ancillary relief.

3. Defendant originally objected to the 12% interest rate used by plaintiffs in their calculations. Plaintiffs subsequently provided documentation indicating that the Funds adopted a 12% interest rate on March 19, 1993. Defendant has not objected to this additional evidence, and accordingly the Court concludes that 12% is the "rate provided under the plan" within the meaning of 29 U.S.C. § 1132(g)(2).

tain all of the ancillary relief available to them under the ERISA and the trust agreements. *See Madison Hotel,* 97 F.3d at 1485–86. By failing to pay the delinquent contributions within the thirty-day period after it received the audit report, defendant forfeited its opportunity to trigger plaintiffs' conditional waiver of their right to interest under the ERISA.

Moreover, the Court concludes that, under the ERISA, the date from which interest should be calculated is the date of the deficiency, not the date of the audit confirming the deficiency. *See South Cent. United Food & Commercial Workers Unions v. C & G Markets, Inc.* 836 F.2d 221, 225 (5th Cir.1988). This result is appropriate because defendant had full use of, and, at least theoretically, earned interest on the money, which should have been paid to the Funds as soon as the due date for contributions passed. Accordingly, the Court finds that plaintiffs are entitled to the $5,968.06 in interest requested, plus an additional $5,968.06 in lieu of liquidated damages under § 502(g)(2)(C) of the ERISA. *See* 29 U.S.C. § 1132(g)(2).

## II. *Attorney's Fees*

■ Plaintiffs request attorney's fees of $243,876.25 and expenses of $2,818.32. As the fee applicants, plaintiffs bear the burden of establishing entitlement to fees, documenting the appropriate hours, and justifying the reasonableness of the rates requested. *See Board of Trustees of the Hotel and Restaurant Employees Local 25 v. JPR, Inc.,* 136 F.3d 794, 806 (D.C.Cir. 1998) (citing *Covington v. District of Co-*

*lumbia,* 57 F.3d 1101, 1107 (D.C.Cir.1995)) [hereinafter *"Covington II"*]; *Martini v. Federal Nat'l Mortgage Ass'n,* 977 F.Supp. 482, 485 (D.D.C.1997). Although defendant in this case does not object to plaintiffs' request for expenses, defendant disagrees with plaintiffs' request for attorney's fees on several grounds.

The usual method of calculating reasonable attorney's fees is to multiply the hours reasonably expended in the litigation by a reasonable hourly fee, producing the "lodestar" amount. *JPR,* 136 F.3d at 801. Defendant first contends that the attorney's fees award should be calculated based on the $125 per hour rate which plaintiffs' counsel charged plaintiffs for its work, not the "market rates" reflected in the updated *"Laffey"* matrix.[4] Defendant also takes issue with the reasonableness of most of plaintiffs' charges, alleging that plaintiffs' counsel billed for excessive and/or unnecessary work and that the case was overstaffed.

### A. Appropriate Hourly Rate

■ Although plaintiffs' counsel charges the Funds $125 for an hour of attorney work and $75 an hour for law graduates awaiting admission to the bar, plaintiffs request that the Court award attorney's fees based on the "market rates" reflected in the updated *Laffey* matrix.[5] Attorneys are permitted to recover fees in excess of those they normally charge in ERISA cases so long as they demonstrate that their custom of charging reduced rates is attributable to "public

---

4. The original *Laffey* matrix was a schedule of hourly fees based on an attorney's years of experience, developed in *Laffey v. Northwest Airlines,* 572 F.Supp. 354 (D.D.C.1983), *rev'd in part on other grounds,* 746 F.2d 4 (D.C.Cir. 1984). The "updated *Laffey* matrix," developed by the United States Attorney's Office to use in settlements, consists of the original *Laffey* matrix fees adjusted by the Consumer Price Index for the Washington, D.C., Metropolitan Area. Plaintiffs' calculation of fees is based on the updated *Laffey* matrix for the period of June 1997 to May 1998.

5. Under the updated *Laffey* fee schedule, the hours worked by Daniel M. Katz ("DMK") and Michael Wolf ("MW") would be billed at $330 per hour; the hours worked by Ellen Ranzman ("ER"), Louise P. Zanar ("LPZ"), and Peter C. Cohen ("PCC") would be billed at $285 per hour; the hours worked by Robert H. Morsilli ("RHM"), Erica J. Dominitz ("EJD"), Nicolas M. Manicone ("NMM"), Lloyd A. Malech ("LAM"), and Donald W. Schroeder ("DWS") would be billed at $155 per hour; and the hours attributed to paralegals would be billed at $85 per hour.

spiritedness." *JPR*, 136 F.3d at 800–06. In order to qualify for the market rate, plaintiffs must (1) demonstrate that their attorneys' practice of discounting fees is attributable to "public spiritedness"; (2) demonstrate that their attorneys' skill and reputation is in line with other attorneys of similar experience in the community, and that the complexity of the case is comparable to other cases; and (3) offer evidence of the prevailing market rates in the relevant community. *See Covington II*, 57 F.3d at 1107–1109; *Martini*, 977 F.Supp. at 485. Once plaintiffs have met their burden by establishing each of these factors, the requested market rate is presumed to be reasonable. *See JPR*, 136 F.3d at 807; *Covington II*, 57 F.3d at 1109 (citing *Blum v. Stenson*, 465 U.S. 886, 897, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). Defendant may challenge any part of plaintiffs' request for attorney's fees by " 'provid[ing] specific contrary evidence tending to show that a lower rate would be appropriate.' " *See id.* at 1109–10 (quoting *National Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1326 (D.C.Cir.1982)). Based on the parties' submissions, the Court then determines whether an award of attorney's fees is appropriate and, if so, the amount of the award. *See id.* at 1110.

■ As an initial matter, the Court concludes that, with the exception of Daniel M. Katz, Louise P. Zanar, and Michael Wolf, plaintiffs have not met their burden of demonstrating that the $125 per hour fee reflects a public-spirited discount. "Implicit in th[e] [public-spirited] line of inquiry is the assumption that the law was not written to subsidize attorneys who charge below-market rates because they cannot command anything more." *Id.* at 1108. Thus "[a]n important part of th[e 'public-spirited'] inquiry ... focus[es] on whether the fee charged in fact differs

significantly from the market value of the attorney's services." *JPR*, 136 F.3d at 807. With the exception of Katz, plaintiffs have not indicated what fees their attorneys ordinarily charge for their services. Nor, with the exception of Zanar and Wolf, have plaintiffs offered evidence from which the Court could infer that plaintiffs' attorneys could have commanded more than $125 per hour on the open market.[6] *See Covington II*, 57 F.3d at 1108 n. 17 (requiring evidence of an attorney's federal court experience to get *Laffey* rates); *Martini*, 977 F.Supp. at 486 n. 4 (finding insufficient evidence that plaintiff's counsel was entitled to market rates for his services, particularly because of the lack of affidavits from other practicing attorneys attesting to his skill and experience or any details about the types of cases he had handled or their complexity). Without such information, the Court cannot determine whether the $125 fee charged reflected a public-spirited discount or the appropriate market value for those attorneys' time. Because plaintiffs carry the burden of establishing a public-spirited discount, the Court concludes that, with the exception of work done by Katz, Zanar, and Wolf, plaintiffs' attorney's fee award will be based on an hourly fee of $125.

Plaintiffs have met their burden of establishing that the $125 charged for the services of Katz, Zanar, and Wolf reflects a public-spirited discount (elusive though that term may be). In support of the first element of the test, plaintiffs have submitted affidavits indicating that these three attorneys could command a rate higher than the $125 they charged, and that this discount was granted for public-spirited reasons. *See* Declaration of Daniel M. Katz ¶ 3 & Ex. A (establishing that Katz can command a rate of $340 per hour for

---

**6.** Although both Ellen Ranzman and Peter Cohen have been practicing for many years, the Declaration of Daniel M. Katz does not shed significant light on their federal litigation experience or on the complexity of cases that they have handled. It also says nothing about the experience of the remaining attorneys, other than their dates of graduation from law school.

his services) [hereinafter "Katz Decl."]; *id.* at ¶¶ 9–13, 15 & 19 (describing the three attorneys' federal litigation experience); *id.* at ¶¶ 2–6 (stating that Katz and his firm discount their fees because it "helps the Funds to remain solvent and thus to continue providing pension benefits and medical, dental and optical care and legal services to workers who, in many cases, would otherwise be unable to afford them"); Declaration of John Boardman ¶ 2 (chairman of the Funds, stating that based on his conversations with Katz, he understands that the $125 fee represents a public-spirited discount); Declaration of Ron Richardson ¶ 2 (same); *see also Covington II*, 57 F.3d at 1110 & n. 19 (noting that affidavits such as Katz's are sufficient to make a finding of a public-spirited motivation); *JPR*, 136 F.3d at 807 ("An affidavit from the client may also help to establish that the client understood that the fee it was being charged reflected a public-spirited discount, even if it may not have been expressly stated that this was the case."). Plaintiffs also have established that the three attorneys' skill and reputation are comparable to those of attorneys with similar experience in the community. *See* Katz Decl. ¶¶ 9–13, 15 & 19; Declaration of Ian D. Lanoff ¶ 2; Declaration of Donald J. Capuano ¶ 1–2. Finally, the updated *Laffey* matrix, along with other evidence of rates charged by ERISA attorneys, meets plaintiffs' burden of establishing the third element, market rates. *See Covington II*, 57 F.3d at 1109.

█ Thus, in order to challenge plaintiffs' entitlement to market rates for the work done by Katz, Zanar, and Wolf, defendant must provide specific evidence tending to show that they did not discount their rates for public-spirited reasons or that a lower rate would otherwise be appropriate. *See id.* at 1109–10. Defendant first contends that the decision to discount rates was not "public spirited," but rather was "purely economic and client-relations based." *See* Def.'s Opp'n to Ancillary Relief, at 27. At support for its contention,

defendant cites the Funds' April 24, 1995, Petition for Reimbursement of Legal Fees and Expenses in *Board of Trustees of Hotel & Restaurant Employees Local 25 v. Lancaster HM of Washington, Inc.*, Civil Action No. 93–1311 JHG, in which Katz's firm represented that the Funds are charged $125 per hour because they are "long-time clients of the law firm." *See* Def.'s Opp'n to Ancillary Relief, Ex. 8. The Court concludes that this single citation is not sufficient to defeat plaintiffs' claim of public-spiritedness, particularly because "it is only necessary for the attorney to show that public-spiritedness was a principal reason for the discount, and not that it was the *only* reason.... Client development and attorney training, for instance, are accepted corollaries of pro bono representation." *JPR*, 136 F.3d at 807 (emphasis in original).

Defendant also contends that plaintiffs are not entitled to the market rates because ERISA collection work cannot command the market rate. As noted by another district court in the § 1988 context:

> Supreme Court and District of Columbia circuit caselaw construing attorney's fee statutes make clear that in resolving any particular attorney's fee question ... courts must aim to award attorney's fees that mirror what counsel would earn in the market. If the market would provide different sub-markets of lawyers different rates, courts properly aiming to mirror the market would award lawyers in each sub-market the fees that their particular services command in the marketplace.

*Covington v. District of Columbia*, 839 F.Supp. 894, 897–98 (D.D.C.1993) (footnotes omitted) [hereinafter "*Covington I*"], *aff'd*, 57 F.3d 1101 (D.C.Cir.1995).

█ In support of its contention that an ERISA sub-market exists, defendant offers evidence of the rates paid by nongovernmental multi-employer funds in the District of Columbia for legal representa-

tion.[7] Defendant's evidence, however, falls short of the "statistically reliable, well-documented, and extensive survey of the rates clients pay" which is required to establish a sub-market and overcome plaintiffs' demonstration that they are entitled to market rates.[8] *See id.* at 899 (emphasis omitted). Having disposed of defendant's objections, the Court finds that plaintiffs are entitled to a rate of $330 an hour for the time billed by Katz (a 29th year attorney) and Wolf (a 26th year attorney), and a rate of $285 an hour for time billed by Zanar (a 13th year attorney).[9]

## B. Objections to Individual Charges

■ Defendant lodges several general objections to the attorney's fees requested. It first notes that the fees sought are disproportionate to the relief requested and contends that "the Court should seriously question the significance of the overall relief obtained by the Funds in determining a 'reasonable' fees for this action." Def.'s Opp'n to Ancillary Relief, at 13. The Court disagrees. "[I]n ERISA cases, there is no requirement that the amount of an award of attorneys' fees be proportional to the amount of the underlying award of damages." *Building Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway,* 46 F.3d 1392, 1401 (6th Cir.1995); *Operating Eng'rs Pension Trusts v. B & E Backhoe, Inc.,* 911 F.2d 1347, 1355 (9th Cir.1990).

Defendant also submits that any award of attorney's fees should take into account that plaintiffs were only partially successful in this action, having both abandoned their request for audit fees and recovered less than the amount of interest originally

claimed. *See Hensley v. Eckerhart,* 461 U.S. 424, 436–37, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (holding that an attorney's fee award should be reduced if a party has only limited success). The Court, however, would not characterize plaintiffs' success in this case as "partial." The goal of plaintiffs' suit was to compel defendant to pay delinquent obligations to the Funds (which defendant paid on February 28, 1995) and to obtain ancillary relief (which was granted to plaintiffs on February 26, 1998). Plaintiffs' lack of success in obtaining the $23,779.12 in interest payments originally requested is easily explained: they requested that figure because of an erroneous calculation (aggregating the interest due with the delinquent contributions). Plaintiffs revised the figure in November 1996 to reflect the proper amount of interest due. *See* Supplemental Declaration of Daniel M. Katz, Ex. B [hereinafter "Katz Supp.Decl."]. Defendant is also correct in stating that plaintiffs did not succeed in their request for audit fees, but this disregards the fact that plaintiffs' motion does not seek an award for time spent on the audit fee issue. *See* Pls.' Reply, at 9 & 25 n. 21; Katz Supp.Decl. ¶¶ 2, 10.

Finally, the Court rejects defendant's sweeping claim that plaintiffs have not established that they were actually charged for their attorneys' work on this case, and that the staffing on the case was excessive. With one exception, as discussed below, plaintiffs' documentation is sufficient to establish that plaintiffs' counsel billed plaintiffs for the time spent on this litigation. *See* Katz. Supp.Decl. ¶ 10 & Ex. F. The Court accepts plaintiffs' explanation for

---

7. According to defendant's submission, the maximum fee paid by funds for ERISA matters is $240 per hour in the District of Columbia.

8. Defendant proffers the rates paid by only eight of the twenty-three nongovernmental multi-employer funds in the District of Columbia without explaining the absence of the others' rates. Defendant's survey also omits evidence of the rates paid by employers for

ERISA litigation and is not "sufficiently documented with supporting affidavits, assuring the court of the accuracy of the survey's data." *Covington I,* 839 F.Supp. at 899.

9. The Court finds that awarding market rates does not raise fee-splitting concerns because the Funds have agreed to remit to counsel any amount awarded in excess of their actual fees. *See* Supp. Katz Decl. ¶¶ 8–9; *see also JPR,* 136 F.3d at 800 & n. 5.

the relatively high number of attorneys used to staff this case; plaintiffs explain that the firm had a busy litigation calendar which forced counsel "to assign attorneys who had the time available to the instant case and we did so unless the assignment would require a lawyer to duplicate the work that others had already done."[10] Katz Supp.Decl. ¶ 19.

Defendant also lists specific objections to the majority of the charges submitted by plaintiffs. The Court has carefully reviewed defendant's objections, the documentation provided by plaintiffs, and their arguments in support of the charges, and finds that, with the exception of a few instances, the number of hours claimed by plaintiffs is reasonable. The Court discusses defendant's major objections and those objections that it upholds in more detail below.

### 1. Hours Expended in the "Initial" District Court Proceedings

Defendant first complains that the 13.25 hours spent drafting the complaint was excessive because the complaint is virtually identical to other ERISA § 502(g)(2) complaints filed by plaintiffs. Plaintiffs, however, point out that this case differed from most § 502(g)(2) cases because it involved previous litigation and a settlement agreement, and thus the complaint had to incorporate these unique facts.[11] The Court agrees with plaintiffs and finds that the hours spent drafting the complaint were reasonable.

Defendant next claims that miscellaneous time from November 18, 1994, to December 16, 1994, was spent on unnecessary or non-billable tasks. The Court finds that these disputed charges are reasonable with the exception of the .75 hours charged for

DWS to travel to the district court and obtain a copy of defendant's answer two days after it was filed. Defendant notes, and plaintiffs do not dispute, that the answer was served via mail.[12] Plaintiffs have not met their burden to explain why they needed to send an attorney to the courthouse to obtain a copy of the answer (no attorney billed time to this matter for another four days after the answer was picked up at the courthouse), and the Court denies their request for reimbursement for this charge.

Defendant contends that the 42 hours spent "analyzing" the answer and researching and developing initial disclosure materials were excessive. The Court, however, concludes that the reasonableness of time spent performing these tasks is self-evident. Moreover, plaintiffs addressed defendant's specific objections in detail in their reply. *See* Katz Supp.Decl. ¶ 18. The Court also rejects defendant's objections to time spent readying discovery documents, responding to defendant's motion to dismiss, and drafting a motion for summary judgment. Although discovery in this case was stayed, the stay was not entered until March 24, 1995, and there were no hours charged to discovery after that date. Nor does the Court believe that 112 hours is an excessive amount of time to spend opposing a motion to dismiss and drafting a motion for summary judgment. Finally, the Court concludes that defendant's sweeping claim that the remaining 94.25 hours were spent on matters that did not have "any benefit to this case" is not, without more specificity, sufficient to overcome the reasonable justification for the time set forth in plaintiffs' submissions.

---

10. Nor has defendant demonstrated that it is unreasonable to bill a client for the time spent by each lawyer present at a strategy session or a conference.

11. The "initial proceedings" ran from November 15, 1994, to April 27, 1995.

12. Although plaintiff's claim that they had to make the trip because they were "unsuccessful" in obtaining a copy of the answer from opposing counsel, *see* Katz Supp.Decl. ¶ 18, this statement appears to reference plaintiffs' unsuccessful attempt to obtain the answer from defendant via fax on December 13, 1994, not any failure to receive the answer by mail.

### 2. Hours Expended in Appellate Proceedings

■ Defendant's main objection to the fees requested for the appellate proceedings is that the time spent drafting plaintiffs' appellate brief and reply brief is excessive in light of the fact that most, if not all, of the research subjects "had already been researched and billed in the initial proceedings."[13] Def.'s Opp'n to Ancillary Relief, at 19. The Court notes that plaintiffs' appellate brief was far more comprehensive than their opposition to defendant's motion to dismiss in this Court, and plaintiffs certainly would have been remiss had they failed to do any extra research.[14] However, the 96 hours (47.25 hours by RHM and 48.75 by LPZ)[15] spent re-researching the effect of a settlement agreement in a dismissed case on a federal court's jurisdiction, including the Supreme Court's decision in *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), for plaintiffs' appellate brief appears to be excessive.[16] Despite defendant's objection, plaintiffs have not explained why they needed to spend 96 hours re-researching this legal issue. Thus, plaintiffs shall be compensated for only 60 of the hours spent researching this topic (30 by LPZ and 30 by RHM).[17] *See Copeland v. Marshall*, 641 F.2d 880, 903 (D.C.Cir.1980) (permitting a district court that detects some duplicative time to reduce the claimed number of hours by some fraction "without performing an item-by-item accounting").

### 3. Hours Spent on Remand

■ Finally, defendant objects to the time plaintiffs spent litigating their motion for summary judgment and motion for ancillary relief on remand. The Court finds those hours for the most part to be reasonable. The Court concludes, however, that plaintiffs are not entitled to attorney's fees for the time spent researching and writing the portions of plaintiffs' request for ancillary relief (and reply) related to the proper market rate for plaintiffs' counsel's work. As noted by defendant, " '[h]ours that are not properly billed to one's client are also not properly billed to one's adversary.' " *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933 (emphasis omitted) (quoting *Copeland*, 641 F.2d at 891). Plaintiffs' submissions state that plaintiffs' counsel "did not bill the Funds for time spent on the market-rate issue." Katz Supp.Decl. ¶¶ 8 & 10. Accordingly, the Court deducts 5.25 hours attributed to DMK and 3.75 hours attributed to LPZ from plaintiffs' request for attorney's fees.[18]

## CONCLUSION

For all of the foregoing reasons, the Court finds that plaintiffs are entitled to $5,968.06 in interest, $5,968.06 in duplicate interest in lieu of liquidated damages, and $2,818.32 in expenses. Plaintiffs are also entitled to attorney's fees of $188,598.75 in accordance with the following chart:

---

13. Defendant also makes cursory objections to time spent by plaintiffs' counsel considering options in lieu of appeal. The Court rejects these objections.

14. Indeed, it appears to the Court that plaintiffs spent only about 16 hours researching their opposition to defendant's motion to dismiss in this Court.

15. These numbers include hours billed by LPZ described only as "Legal Research for appellate brief," and hours billed by RHM referencing "issues related to Madison appeal." It is plaintiffs' burden to demonstrate the reasonableness of the time spent. Due to their failure to explain the research with

greater specificity, especially after defendant objected to the entries as "vague," the Court assumes that this time was spent researching the effect of a settlement agreement.

16. Plaintiffs assert that they spent a total of 125.5 hours researching issues for their appellate brief.

17. Thus, LPZ's hours are decreased by 18.75 and RHM's are decreased by 17.25.

18. When the billing statements indicated that a block of time was spent on several issues, one being the market rate issue, the Court apportioned the time spent accordingly.

| Attorney | Time | Rate | Total Amount |
|---|---|---|---|
| DWK | 89.5 | $330 | $ 29,535.00 |
| MW | 14.25 | $330 | $ 4,702.50 |
| ER | 29.25 | $125 | $ 3,656.25 |
| LPZ | 373 | $285 | $106,305.00 |
| PCC | 200.25 | $125 | $ 25,031.25 |
| DWS | 6.25 | $125 | $ 781.25 |
| LAM | 42.25 | $125 | $ 5,281.25 |
| RHM | 72.75 | $125 | $ 9,093.75 |
| NMM | 26.5 | $125 | $ 3,312.50 |
| EJD | 5.25 | $125 | $ 656.25 |
| Paralegal | 3.25 | $ 75 | $ 243.75 |
| | **861.75** | | **$188,598.75** |

In accordance with Federal Rule of Civil Procedure 58, an appropriate Judgment accompanies this Opinion.

### *JUDGMENT*

For the reasons stated in the accompanying Opinion, it hereby is

ORDERED, that plaintiffs' motion for ancillary relief is granted in part and denied in part.

It hereby further is

ORDERED, that plaintiffs are awarded a total of $203,353.19 in interest, double interest in lieu of liquidated damages, and attorney's fees and expenses.

SO ORDERED.