**Rebecca L. CUNNINGHAM, an individual, Appellant,**

v.

**The CITY OF McKEESPORT, William Weissert, Samuel R. Vidnovic, Gerald F. Boyle, Joseph P. Graziano, James Heatherington, Charles A. Sharbaugh, Nicholas J. Skezas, Carolyn O. Young, and Omslaer Wrecking Co., Robert Clyde Omslaer, t/d/b/a Omslaer Wrecking Company, Appellees.**

No. 84–3209.

United States Court of Appeals, Third Circuit.

Submitted Under Rule 12(6), Aug. 18, 1986.

Decided Dec. 12, 1986.

Deborah D. Olszewski, Trushel, Wood & Israel, Pittsburgh, Pa., for appellee.

James R. Cooney, Nernberg & Laffey, Pittsburgh, Pa., for appellant.

Before GIBBONS, BECKER, Circuit

Judges, and KATZ,* District Judge.

## OPINION SUR REMAND FROM UNITED STATES SUPREME COURT

BECKER, Circuit Judge.

The Supreme Court has remanded this case to us for further consideration in light of its opinion in *City of Riverside v. Rivera,* —— U.S. ——, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986). This opinion reflects that further consideration. For the reasons that follow, we believe that the Supreme Court's plurality opinion —— U.S. ——, 106 S.Ct. 3324, 92 L.Ed.2d 731 does not undermine our original panel opinion, which is reported at 753 F.2d 262 (3d Cir. 1985). Therefore we will reinstate our previous order reversing the judgment of the district court and will remand the case for further proceedings consistent with the panel opinion.

### I.

This is a civil rights case brought under 42 U.S.C. § 1983, in which the plaintiff sought recovery against the City of McKeesport and a number of its officials after a house and garage that she owned were demolished by the city without prior notice. The defendants contested both liability and damages. After extensive discovery and a three-day jury trial, the plaintiff won a verdict of $35,000, which the district court reduced to $17,000. Plaintiff thereupon sought a counsel fee award in the sum of $35,887.50, on the claim that her counsel had devoted 358 hours in connection with the case, including 247.75 hours in pretrial discovery. She asserted that the services rendered were worth $100 to $125 per hour depending on the particular attorney who performed the services. The district court disallowed all but 219 hours, and valued the services at $50 per hour. This resulted in a lodestar of $10,950. The court then applied a 50% negative multiplier to the lodestar and approved an additional $400 in attorney's fees for prosecution of the fee petition, arriving at a total award of $5,875.

Holding that these reductions were improper, this panel reversed and remanded for recalculation of the fee in accordance with the panel's decision, *see* 753 F.2d 262 (3d Cir.1985). We reasoned first that the court had no basis for reducing the rate or disallowing those hours of which the court had no personal knowledge. The claimed hours and billing were uncontradicted in the record and defendants had not challenged their reasonableness. We also held that the negative multiplier was improper because the grounds assigned by the district court for applying the negative multiplier were not cognizable in law, *see infra* at pp. 53–54. Significantly, the defendants did not assert either before the district court or before this court the contention that the claimed counsel fee was disproportionate to the damages. However, several members of this court expressed concern over the disproportion between the damage award and the fee that would result from the panel's decision. *See* Statement by Circuit Judge Adams Sur Denial of Petition for Rehearing, 753 F.2d at 269.

The defendants petitioned the Supreme Court for a writ of certiorari. Notwithstanding the clearly articulated concern about proportionality in Judge Adams' statement, the defendants petition for certiorari did not articulate a proportionality claim.[1] Nonetheless, the Supreme Court

---

* Honorable Marvin Katz, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

1. Defendants raised two questions in their Petition for Writ of Certiorari:

I. Whether the decision of the United States Court of Appeals for the Third Circuit in applying the standards of *Lindy Brothers, Inc., v. American Radiator and Standard Sanitary Corporation,* 540 F.2d 102 (3d Cir.1976), thereby dictating the amount of attorney's fees is so far a departure from the body of federal law governing the award of attorney's fees in Civil Rights cases and so repugnant to the intention and spirit of the Civil Rights Act as a whole, as to warrant this Court's power of Supervision?

II. Whether the decision of the United States Court of Appeals for the Third Circuit is in conflict with another decision of the Third Circuit setting forth the standard of review

plainly understood proportionality to be the central question posed by the petition, *see City of Riverside v. Rivera,* — U.S. —, 106 S.Ct. 5, 7, 87 L.Ed.2d 683 (1985) (opinion of Rehnquist, J., sur grant for a stay of Court of Appeals mandate) (identifying proportionality as an issue in *City of McKeesport* and concluding "that it is likely that certiorari will be granted in either this case or *City of McKeesport,* or both."). Faithful to Justice Rehnquist's prediction, the Supreme Court did grant certiorari on this issue—in the *City of Riverside* case.

## II.

In *City of Riverside,* eight Chicano persons filed a civil rights action against the city and 30 of its individual police officers who had broken up a party and arrested and imprisoned them. The plaintiffs, alleging that the conduct of defendants displayed a discriminatory animus, asserted violations of the plaintiff's first, fourth and fourteenth Amendment rights. The district court granted summary judgment in favor of 17 of the individual police officers, and the case proceeded to trial against the remaining defendants. The jury returned a verdict against the city and five individual officers, awarding plaintiffs damages in the amount of $33,350.

Plaintiffs thereafter sought attorney's fees pursuant to the Civil Rights Attorney Fees Award Act. 42 U.S.C. § 1988, in the amount of $245,456.25, for 1,946.75 hours at the rate of $125. The district court granted fees in the lodestar amount requested, and the Court of Appeals for the Ninth Circuit affirmed. 679 F.2d 795 (9th Cir.1982). The Supreme Court, 461 U.S. 952, 103 S.Ct. 2421, 77 L.Ed.2d 1310, granted certiorari, vacated the judgment, and remanded the case for reconsideration in light of *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Following remand, the district court reaffirmed its award in the amount of the requested lodestar, and again the Ninth Circuit affirmed. 763 F.2d 1580 (9th Cir. 1985). Defendants again sought certiorari

and the Supreme Court granted the writ to determine the sole issue of whether "the district court's fee award was not 'reasonable' within the meaning of § 1988, because it was disproportionate to the amount of damages recovered by respondents". — U.S. —, 106 S.Ct. 244, 88 L.Ed.2d 253 (1985).

In his opinion announcing the judgment of the court, Justice Brennan considered both the legislative history as well as the purposes for the enactment of 42 U.S.C. § 1988, and determined that proportionality was not a requirement:

> A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts. This is totally inconsistent with the Congress' purpose of enacting § 1988. Congress recognized that private-sector fee arrangements were inadequate to ensure sufficiently vigorous enforcement of civil rights. In order to ensure that lawyers would be willing to represent persons with legitimate civil rights grievances, Congress determined that it would be necessary to compensate lawyers for all time reasonably expended on a case.

— U.S. —, 106 S.Ct. 2686, 2696, 91 L.Ed.2d 466 (1986).

Justice Powell concurred in the judgment, although he displayed obvious discomfort with the result. *See* 106 S.Ct. at 2698 (Powell, J., concurring in the judgment) ("on its face, the fee award seems unreasonable"). He joined in the judgment because he was satisfied that affirmance was required by the district court's detailed findings of fact, which had been approved by the Court of Appeals. *Id.* at 2699. Justice Powell addressed the question of proportionality in a paragraph of text augmented by a pregnant footnote:

> Petitioners argue for a rule of proportionality between the fee awarded and the damages recovered in a civil rights case. Neither the decision of this Court

and, in fact, ignored that standard? *Silber-*

*man v. Bogle,* 683 F.2d 62 (3rd Cir.1982).

nor the legislative history of § 1988 support such a "rule." The facts and circumstances of litigation are infinitely variable. Under *Hensley*, of course, "the most critical factor [in the final determination of fee awards] is the degree of success obtained." 461 U.S., at 436, 103 S.Ct. at 1941. Where recovery of private damages is the purpose of a civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought. In some civil rights cases, however, the court may consider the vindication of constitutional rights in addition to the amount of damages recovered. In this case, for example, the district court made an explicit finding that the "public interest" had been served by the jury's verdict that the warrantless entry was lawless and unconstitutional. Although the finding of a Fourth Amendment violation hardly can be considered a new constitutional ruling, in the special circumstances of this case, the vindication of the asserted Fourth Amendment right may well have served a public interest, supporting the amount of the fees awarded.* As the district court put it, there were allegations that the police misconduct was "motivated by a general hostility to the Chicano community in the area...." App. to Pet. for cert. 2-8. The record also contained evidence of racial slurs by some of the police.

---

* It probably will be the rare case in which an award of private damages can be said to benefit the public interest to an extent that would justify the disproportionality between damages and fees reflected in this case.

*Id.* at 2700 & n. 3.

Justice Rehnquist, joined by the remaining justices, dissented. Using as his starting point the precept of *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), that "[t]he district court ... should exclude from this initial fee calculation hours that were not 'reasonably expended'" on the litigation, Justice Rehnquist would have held that the District Court's finding that respondents' attorneys "reasonably" spent 1,946.75 hours to recover a money judgment of $33,350 was clearly erroneous. While not drawing the contours of a proportionality requirement, the dissent made clear that the plaintiff had to demonstrate a reasonable relationship between the amount of the recovery and the amount of the fee.

### III.

The principal question before us, of course, is what to make of *City of Riverside*, or more precisely, of the Supreme Court's vacatur of our judgment and remand for reconsideration in light of that opinion.

### A.

■ In terms of what appears to be the preeminent question—that of proportionality—the Supreme Court plurality rejected a proportionality rule. Therefore, under the plurality approach, even if we deem the defendants to have raised proportionality as an issue, it cannot help them. Indeed, we find nothing in the plurality opinion that affects our previous decision. The unifying theme of the plurality opinion is the plurality's satisfaction that the findings of the district court were sufficiently detailed to justify the fee award. We, however, face the obverse situation. In this case, the findings of the district court purporting to justify a reduction in the fee request are not specific and lack the evidentiary basis to counter the uncontradicted affidavit of plaintiff's counsel detailing the hours expended and billing rate.

The district court reduced the lodestar request by disallowing hours and by reducing the billing rate. As we stressed in our earlier opinion, the court had no facts before it to justify such a reduction. In the absence of any factual claims by defendants, the only reduction the court could properly order concerned hours about which the district judge had personal knowledge, namely, hours claimed for work at pretrial conferences and at trial. Moreover, defendants did not even challenge the reasonableness of the hours or the hourly

rate, but relied on legal arguments properly rejected by the district court and by us, that no fee should be awarded at all. *See* 753 F.2d at 265–66, 68. We considered it inappropriate for a district court in an adversarial system to reject uncontradicted sworn affidavits because of reasons not raised by opposing counsel and on the basis of facts "of which the trial court has no personal knowledge." 753 F.2d at 267. Thus, the essence of our decision reversing the district court's calculation of the lodestar figure was procedural. Nothing in the plurality opinion in *City of Riverside* would appear to affect this reasoning, and defendants' submissions on remand have furnished us with no reason or authority demonstrating that our earlier opinion was incorrect.

### B.

We have considered the possibility that, given the 4–1–4 vote of the Supreme Court, we are charged with applying the thrust of Justice Powell's somewhat enigmatic footnote, quoted *supra* at 52. That approach arguably counsels a judge to consider the extent to which the public interest was vindicated by the award if the fee sought is disproportionate to the damages awarded. As an initial matter, we do not believe even this arguable interpretation is relevant to our reversal of the district court's lodestar calculation. We did not base that reversal on a rejection of a proportionality principle, only on the failure of defendants to challenge the reasonableness of the lodestar fee request with arguments or evidence.

Conceivably, Justice Powell's footnote could be relevant if the vacatur of our earlier decision was directed not at our reversal of the lodestar determination but rather at our rejection of the district court's negative multiplier. The district court applied a negative multiplier based upon the following reasoning:

> The *Lindy* [lodestar] amount as calculated above will be subject to a post-*Lindy*

discretionary adjustment. Plaintiff's counsel did not successfully advance new law which might serve the public interest in the future. The decision affected only an individual plaintiff who was subject to an isolated act of deprivation for which she was adequately compensated. There was no indication of bad faith in defense of the action. In light of these considerations, a reduction of the *Lindy* amount by 50% to $5475 is fair and equitable in this case.

App. 80a (citations omitted). We reversed because we observed that many constitutional rights are singular in nature and that no case had ever suggested that such a fact could justify a negative multiplier. We also noted that bad faith in defense of an action was irrelevant to a negative multiplier. Finally, we emphasized that multipliers were not subject to a district court's general discretion but were justifiable only on particular grounds based on specific findings supportable in the record. 753 F.2d at 268–69.

We recognize that Justice Powell's decision does suggest a difference between cases in which "recovery of private damages is the purpose" and other cases for which "the court may consider the vindication of constitutional rights in addition to the amount of damages recovered." 106 S.Ct. at 2700. In Justice Powell's view, this distinction is relevant for evaluating the extent to which a jury's verdict serves the "public interest." *Id.* Combined with the statement in the footnote that only in the rare case might the public interest justify a substantial disproportionality between damages and fees, Justice Powell's opinion might be read to suggest that disproportionality justifies a negative multiplier.

We refrain from inferring such a view from *City of Riverside*, however. First, this interpretation represents at most the view of a lone Justice and was not endorsed by any of the other eight.[2] It may

---

**2.** We have considered whether Justice Powell has simply endorsed a more limited view of proportionality than the dissent, so that we may

infer the support of the four dissenters for Justice Powell's approach. However, in contrast to Justice Powell's focus on the public interest, the

not even adequately characterize Justice Powell's views, for his opinion also states that "[n]either the decisions of this Court nor the legislative history of § 1988 support" a proportionality rule. 106 S.Ct. at 2700. Second, we have doubts about Justice Powell's statement that only the rare case justifies disproportionate fee awards. The facts of *City of Riverside* seem similar to those of a number of § 1983 cases that we have seen. If the facts of *City of Riverside* justify a "disproportionate" fee award, the facts in many if not most § 1983 cases should do so as well. Finally, we consider application of Justice Powell's reasoning problematic. The opinion sets out no method or standards by which a court might calculate the public interest served by a case, evaluate that interest in light of a disproportionality between damages and fees, and eventually settle upon a particular negative multiplier. In the absence of an explicit mandate, we are reluctant to begin the difficult task of developing standards by which we might incorporate proportionality principles into the attorney's fee calculus.

■ Even assuming that we have accurately characterized Justice Powell's views and should apply them to this case, we do not believe they dictate a different result here. As in our reasoning about the lodestar, we reversed the district court's negative multiplier in part because the court's findings were not specific and were not grounded in the record. Indeed, defendants did not even raise a claim that might justify a negative multiplier under the views we attribute to Justice Powell. Defendants did claim that because Cunningham sought recovery for herself alone, she was not vindicating interests of the public at large and so should not recover *any* fee. However, by whatever standards we evaluate the public interest served by a suit for private damages, the mere fact that a constitutional right is singular in nature cannot be determinative. In sum, the rationale for our ruling is untouched even by a broad reading of Justice Powell's concurrence.

## IV.

It may be that in cases to come the Supreme Court will refine or alter the standards for calculating counsel fees, or perhaps Congress will do so. Under present standards, however, defendants did not properly challenge the reasonableness of the fee request. Neither the record nor the district court's findings were adequate to justify the drastic reduction of plaintiff's uncontradicted claims under our present standards. Nothing in *City of Riverside* that we can identify or that the defendants have pointed out affects that result. Accordingly, the judgment of the district court will be reversed and the case remanded for further proceedings consistent with our original panel opinion.

---

dissent's exceptions to a strict, albeit undefined, proportionality rule would focus on specific, "identifiable benefits" to non-plaintiffs or specific other factors that explain a particularly high fee relative to the damage award or a particularly low damage award relative to a fee. Nothing in the dissent suggests sympathy for the view that some suits advance the public interest more than others because of factors distinct from the relief obtained. We are, accordingly, unwilling to ascribe Justice Powell's view to the dissenters merely on the grounds of their support for proportionality.