

Villanova University School of Law

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-4-2007

# Local 259 v. Metro Auto Ctr

Precedential or Non-Precedential: Precedential

Docket No. 05-4974

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Local 259 v. Metro Auto Ctr" (2007). *2007 Decisions.* Paper 357.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/357

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-4974
_____

UNITED AUTOMOBILE WORKERS LOCAL 259
SOCIAL SECURITY DEPARTMENT,

v.

METRO AUTO CENTER,

Appellant.
_____

On Appeal from the United States District Court
for the District of New Jersey
(No. 03-cv-02123)
District Judge:  Honorable Joseph A. Greenaway, Jr.
Argued November 8, 2006

Before:  SLOVITER, CHAGARES and GREENBERG, <u>Circuit
Judges</u>.


_____

(Filed September 4, 2007)


Joseph M. Labuda (Argued)
Milman & Heidecker
3000 Marcus Avenue, Suite 3W3
Lake Success, NY 11042

<u>Counsel for Appellant</u>

Jeremy E. Meyer (Argued)
Cleary & Josem

1420 Walnut Street, Suite 300
Philadelphia, NY 19102

<u>Counsel for Appellee</u>

<u>OPINION OF THE COURT</u>

CHAGARES, <u>Circuit</u> <u>Judge</u>.

This is an appeal from an award of attorneys' fees for an action brought by a union pension and welfare fund against an employer pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 ("ERISA"). After granting a motion for summary judgment in favor of the fund, the District Court ordered the employer to pay attorneys' fees. The employer appeals, arguing that the District Court should have dismissed the fund's application for fees as untimely and, in the alternative, that the amount of the award was unreasonable.

We conclude that the motion for fees was timely and that the fee award was reasonable. Accordingly, we will affirm the District Court. In so doing, we consider two questions left unanswered by this Court's previous decisions: first, whether a trial court must award interest under 29 U.S.C. § 1132(g)(2)(B) on an employer's delinquent contributions that were unpaid at the time a suit was filed but paid by the time of judgment, and, second, whether proportionality necessarily limits mandatory fee awards in the ERISA context. We answer yes to the first question and no to the second.

**I.**

Plaintiff United Automobile Workers Local 259 Social Security Fund ("the Fund") is a union pension and welfare fund. Defendant Metro Auto Center ("Metro") is an employer obligated by a collective bargaining agreement to pay monthly contributions to the Fund. On May 7, 2003, the Fund filed a complaint in the United States District Court for the District of New Jersey pursuant to ERISA § 515, 29 U.S.C. § 1145, seeking unpaid contributions

totaling $1,928.00, as well as interest on the unpaid contributions and attorneys' fees. In March 2004, while the action was pending, Metro paid the Fund $964.00, but denied that it owed the Fund another $964.00.

The parties then filed cross-motions for summary judgment. By an order dated December 8, 2004, the District Court denied Metro's motion for summary judgment and granted the Fund's motion. The District Court Judge signed the order on December 13, 2004, and the clerk entered it on December 14, 2004.

On January 14, 2005, the Fund moved for attorneys' fees and costs in the amount of $35,304.89 pursuant to ERISA § 502(g)(2)(D), 29 U.S.C. § 1132(g)(2)(D), which instructs courts to award reasonable fees to prevailing plans in actions to collect delinquent contributions under ERISA § 515, 29 U.S.C. § 1145. On October 20, 2005, the District Court entered an order granting the Fund $28,623.14 in fees, a $6,681.75 reduction from the amount requested. The District Court concluded the full amount requested was unreasonable because it included fees for work spent on legal matters not necessary to the successful claim for contributions. The District Court refused Metro's request to reduce the award in order to create proportionality between the fee award and the underlying damages. Additionally, the District Court rejected Metro's objection that 67 hours of charges were "excessive," noting Metro provided "no specific explanation setting forth why this Court should agree." United Auto. Workers, Local 259 Soc. Sec. Dep't v. Metro Auto Ctr., No. 03-cv-02123, slip op. at 4 (D.N.J. Oct. 20, 2005) (unpublished) (order granting motion for fees).

## II.

It is undisputed that ERISA mandates an award of reasonable attorneys' fees when, as here, a fund prevails in an action for unpaid contributions pursuant to 29 U.S.C. § 1145. See 29 U.S.C. § 1132(g)(2)(D); Bd. of Trs. of Trucking Employees of N. Jersey Welfare Fund, Inc. v. Centra, 983 F.2d 495, 509 (3d Cir. 1992); Penn Elastic Co. v. United Retail & Wholesale Employees Union, 792 F.2d 45, 47-48 (3d Cir. 1986). The relevant procedures

3

for filing requests for fees are dictated by the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the District of New Jersey. See Fed. R. Civ. P. 54(d); D.N.J. L. Civ. R. 54.2; Planned Parenthood of Cent. N.J. v. Att'y Gen. of N.J., 297 F.3d 253, 259-61 (3d Cir. 2002).

Metro appeals the award granted to the Fund on two grounds. First, Metro argues the District Court should have dismissed the Fund's application for fees as untimely. Second, Metro argues the fee award is unreasonable.

Because the District Court's order of October 20, 2005, reduced the fee award to a definite amount, it was a final decision. See Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 701 (3d Cir. 2005). Accordingly, we have jurisdiction over the District Court's order granting fees. See 28 U.S.C. § 1291.

## A.

We first consider whether the Fund's request for fees was timely. We review the legal interpretation of procedural rules de novo. Planned Parenthood, 297 F.3d at 259.

Rule 54 of the Federal Rules of Civil Procedure provides that motions for attorneys' fees must be filed no later than fourteen days after entry of judgment, unless otherwise provided by statute or order of the court. Fed. R. Civ. P. 54(d)(2)(B). Rule 54.2 of the Local Civil Rules of the United States District Court for the District of New Jersey provides "an attorney seeking compensation for services or reimbursement of necessary expenses shall file with the Court an affidavit within 30 days of the entry of judgment or order, unless extended by the Court," setting forth information about the services rendered. We have previously held that Local Civil Rule 54.2 extends the time within which to file for fees from fourteen days to thirty as a standing order of the district court. See Planned Parenthood, 297 F.3d at 261.

In this case, the Fund filed its application for attorneys' fees on January 14, 2005, thirty-one days after the clerk entered the District Court's summary judgment order. The parties agree that

4

the rules provide a thirty-day time period within which to file a request for fees, and they agree that the clock starts to run when the District Court enters final judgment on the underlying claim. They disagree, however, about whether December 14, 2004, the date of entry of the summary judgment order, should be considered the date of entry of a final judgment giving rise to the fee request.

**1.**

At the outset, we must consider the application of Rule 58 of the Federal Rules of Civil Procedure to the time period for a motion for fees. Rule 58 is most well known for clarifying the time within which an appeal must be taken, but it also clarifies the timing of post-trial motions.[1] Rule 58(a) provides "[e]very judgment and amended judgment must be set forth on a separate document" except for those disposing of certain motions. If a separate document is required, but no separate document is issued, a court must deem the judgment's date of entry as 150 days after its entry in the civil docket. Fed. R. Civ. P. 58(b). We mechanically apply Rule 58 to prevent uncertainties as to the date on which a judgment is entered, see United States v. Indrelunas, 411 U.S. 216, 221-22 (1973) (per curiam); In re Cendant Corp. Sec. Litig., 454 F.3d 235, 243-44 (3d Cir. 2006), because "[d]etermining the date of entry is critical for motion practice under the Federal Rules of Civil Procedure[] and for the timely filing of a notice of appeal." United States v. Fiorelli, 337 F.3d 282, 287 (3d Cir. 2003) (footnote omitted).

---

[1] See 11 Charles A. Wright, et. al, Federal Practice & Procedure § 2781 (1995):

Rule 58 is intended to resolve "the old, old question of when is a judgment a judgment." It is of great importance in litigation to know precisely what the judgment is and when it was entered. The time in which to make post-trial motions runs from the entry of judgment as does the time when execution may issue. Most important, however, is the fact that the time for appeal runs from the entry of the judgment.

Metro argues Rule 58(a) does not require a separate document for a judgment to trigger the time period of a Rule 54(d) fees motion. The text of Rules 58 and 54 require that we reject this argument. Rule 58 addresses the "time of entry" for judgments for the "purposes of these rules" and Rule 54 requires motions for fees to be filed within 14 days after the "entry of judgment." Rule 58 enumerates certain exceptions to its formalities, none of which are relevant here.[2] Therefore, when an order does not comply with Rule 58, there is no immediate "entry of judgment" triggering the time period for Rule 54(d) motions. In such circumstances, the time period begins 150 days after entry of the order, as set forth in Rule 58(b).[3]

---

[2] The exceptions to Rule 58 are listed in Rule 58(a)(1):

Every judgment and amended judgment must be set forth on a separate document, but a separate document is not required for an order disposing of a motion:
    (A) for judgment under Rule 50(b);
    (B) to amend or make additional findings of fact under Rule 52(b);
    (C) for attorney fees under Rule 54;
    (D) for a new trial, or to alter or amend the judgment, under Rule 59; or
    (E) for relief under Rule 60.

Metro argues that the District Court's summary judgment order did not need to be a separate document because Rule 58 provides "a separate document is not required for an order *disposing of a motion* . . . for attorney fees under Rule 54." Fed. R. Civ. P. 58(a)(1) & (a)(1)(C) (emphasis added). Metro misunderstands the import of this exception to the separate-document requirement. The exception would be relevant if the Court was concerned with the timeliness of an appeal from an order denying a motion for fees, but it is not relevant to whether an application for fees was timely. There is no exception to the separate-document requirement for orders deciding underlying cases in which fees can be sought.

[3] The Advisory Committee Notes confirm that Rule 58's formalities are intended to clarify the time periods for motions

6

Accordingly, if the District Court's December 14 summary judgment order is not a separate document, the time period for an application for fees provided by Rule 54(d) (and extended by D.N.J. L. Civ. R. 54.2) began to run 150 days after December 14. More specifically, if the December 14 order was not a separate document, the Fund's motion for fees was timely.

**2.**

An order is considered a separate document for purposes of Rule 58 if it satisfies three requirements: "first, the order must be self-contained and separate from the opinion; second, the order must note the relief granted; and third, the order must omit (or at least substantially omit) the District Court's reasons for disposing of the parties' claims." Cendant Corp., 454 F.3d at 241 (citing Local Union No. 1992 of Int'l Bhd. of Elec. Workers v. Okonite Co., 358 F.3d 278, 285 (3d Cir. 2004)).

Here, the District Court's order granting summary judgment satisfied the first and third requirements of the separate-document rule, but did not specify the relief to which the Fund was entitled.[4]

---

made pursuant to Rule 54. See Fed. R. Civ. P. 58, 2002 advisory committee's note ("[I]n the cases in which court and clerk fail to comply with this simple requirement [of a separate document], the motion time periods set by Rules 50, 52, 54, 59, and 60 begin to run after expiration of 150 days from entry of the judgment in the civil docket as required by Rule 79(a)."); see also Fiorelli, 337 F.3d at 287 (using Rule 58 to determine the timeliness of a motion to set aside a conviction pursuant to 28 U.S.C. § 2255).

[4] The order was a self-contained document and did not include the court's reasoning. It provided, in its entirety:

> This matter having come before the Court on the cross-motions of the parties (Docket Nos. 24, 25, 26 and 27) for summary judgment, pursuant to Fed. R. Civ. P. 56; and this Court having reviewed the parties' submissions and having heard oral argument; and for the reasons set forth in this Court's forthcoming Opinion and upon good cause

7

Metro argues the amount of the relief could easily be determined by 29 U.S.C. § 1132(g)(2), even though the amount was not explicit in the District Court's order. See Vitale v. Latrobe Area Hosp., 420 F.3d 278, 281 (3d Cir. 2005) (describing a narrow exception to the general rule regarding final orders that treats an order as final as long as the relief can be determined through a mechanical and uncontroversial calculation even if relief is not specified in the order); Skretvedt v. E.I. DuPont De Nemours, 372 F.3d 193, 200 n.8 (3d Cir. 2004) (same).[5]

Section 1132(g)(2) of title 29 of the United States Code dictates the relief prevailing funds are due in a § 1145 action for unpaid contributions. It provides,

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
> (A) the unpaid contributions,

---

appearing,
IT IS on this 8th day of December, 2004,
ORDERED that Defendant's motion for summary judgment on Plaintiff's complaint and on its Counterclaim (Docket Nos. 24, 25, and 26) in this matter are DENIED; and it is further
ORDERED that Plaintiff's cross-motion for summary judgment on its Complaint and Defendant's Counterclaim (Docket No. 27) should be GRANTED; and it is further
ORDERED that a copy of this Order be served on the parties within 7 days of the entry of this Order.

United Auto. Workers, Local 259 Soc. Sec. Dep't v. Metro Auto Ctr., No. 03-cv-02123 (D.N.J. Dec. 14, 2005) (order granting pl. motion for summary judgment).

[5] For the purposes of this appeal, we will assume that this exception to "final judgment" applies to the separate-document requirements of Rule 58.

(B) interest on the unpaid contributions,
(C) an amount equal to the greater of—
  (i) interest on the unpaid contributions, or
  (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
(E) such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

The Fund argues the District Court did not simply have an uncontroversial, ministerial calculation to perform once it granted summary judgment because this Court has not provided guidance on how to interpret 29 U.S.C. § 1132(g)(2)(B). Specifically, given that Metro paid a portion of the delinquent contributions while litigation was pending, the Fund asserts it was unclear whether the District Court would award interest on those previously paid fees, as well as interest on the portion still unpaid by the time of judgment.[6]

In awarding a "judgment in favor of the plan" the District Court had to award "the unpaid contributions" and the "interest on the unpaid contributions." 29 U.S.C. § 1132(g)(2)(A), (B). The phrase "unpaid contributions" in 29 U.S.C. § 1132(g)(2)(B) could

---

[6] The Fund does not argue that the District Court's ability to award "legal or equitable relief as the court deems appropriate," 29 U.S.C. § 1132(g)(2)(E), prevented the relief from being uncontroversially and ministerially calculated after the court granted summary judgment. We, therefore, do not address this argument.

refer either to contributions owed at the time suit commenced or contributions owed at the time judgment was entered. Several courts have determined that § 1132(g)(2) remedies apply to all contributions that are unpaid at the time a plan files suit, even if those debts are partially satisfied before judgment. See Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Constr. Corp., 258 F.3d 645, 654 (7th Cir. 2001); Nw. Adm'rs, Inc. v. Albertson's, Inc., 104 F.3d 253, 257 (9th Cir. 1996); Iron Workers Dist. Council v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502, 1507 (2d Cir. 1995); Carpenters Amended & Restated Health Ben. Fund v. John W. Ryan Constr. Co., 767 F.2d 1170, 1172 (5th Cir. 1985); see also Carpenters & Joiners Welfare Fund v. Gittleman Corp., 857 F.2d 476, 478 (8th Cir. 1988) (holding the term "unpaid contributions" in § 1132(g)(2)(C) means "contributions unpaid at the time suit was filed, rather than contributions which were delinquent for some time but which were paid up before suit was filed").

At least one court, however, has prevented a fund from recovering interest on delinquent contributions that were paid between filing and judgment. Mich. Carpenters Council Health & Welfare Fund v. C.J. Rogers, Inc., 933 F.2d 376, 388 (6th Cir. 1991). In C.J. Rogers, the Court of Appeals for the Sixth Circuit reasoned that § 1132(g)(2)(B) "appl[ies] only if there [are] unpaid contributions on the date of the award" because 1132(g)(2) "provides that upon 'a *judgment* in favor of the plan' the court shall award the plan '*the* unpaid contributions' and 'interest on *the* unpaid contributions.'" Id. at 388 (quoting § 1132(g)(2)(A) & (B) (emphasis added by C.J. Rogers, Inc.)).

We conclude the better interpretation of § 1132(g)(2)(B) requires that plans be awarded interest on contributions unpaid at the time the suit is filed. As the Court of Appeals for the Second Circuit acknowledged, § 1132(g)(2)(B) refers to unpaid contributions "not to establish a limit on qualifying judgments, but rather because the amount of an award of interest or liquidated damages should logically be predicated upon the amount of the unpaid contributions originally at issue." Iron Workers, 68 F.3d at 1507. The payment of interest compensates plans for one kind of "'cost[] incurred in connection with delinquencies,'" that is, the

10

loss of interest. Bd. of Trs. of Hotel & Rest. Employees Local 25 v. JPR, Inc., 136 F.3d 794, 803 (D.C. Cir. 1998) (quoting Staff of Sen. Comm. on Labor and Human Resources, 96th Cong., 2d Sess., S. 1076, The Multiemployer Pension Plan Amendments of 1980: Summary and Analysis of Consideration (Comm. Print 1980) 43-44); see also Laborers Health & Welfare Trust Fund for N. Cal. v. Advanced Lightweight Concrete Co., 484 U.S. 539, 546 n.12 (1988). The purpose of the provision would be defeated if we allowed employers to avoid paying interest simply by satisfying their debt moments before the court issues judgment. See Iron Workers, 68 F.3d at 1508 ("Permitting delinquent employers to avoid paying § 1132 penalties after suit is filed . . . would largely thwart the purpose of § 1132(g)(2) to provide plan fiduciaries with an effective weapon against delinquent employers. It would also anomalously cause only employers with legitimate legal arguments (. . . awaiting final judgment) to pay ancillary relief.") (citations omitted); John W. Ryan Constr., 767 F.2d at 1175 ("In fact, [the defendant-employer's] interpretation of § 1132(g)(2) would reward bad faith employers who insist on the spectre of adverse judgment before making payments they know or even concede to be delinquent and, at the same time, penalize good faith employers who litigate delinquencies through judgment because of a genuine dispute about whether money is owed."); Gilles v. Burton Constr. Co., 736 F.2d 1142, 1146 n.6 (7th Cir. 1984) ("After suit is filed, we doubt that employers who are delinquent in their contributions can avoid the mandatory relief provisions of section 1132(g)(2) through the device of offering to pay only the overdue contributions.").

Accordingly, the District Court could properly award the Fund interest on those delinquent contributions that Metro paid while the action, brought pursuant to 29 U.S.C. § 1145, was pending. We recognize, however, that neither the District Court nor the parties knew our position on this issue at the time of the summary judgment order. The parties could not be assured of the relief that would be awarded after the grant of summary judgment.

Because the District Court's order granting summary judgment provided neither the amount of relief granted, nor left only a ministerial calculation, the order cannot be considered a

separate document for purposes of Rule 58. Without a separate document, the thirty-day limit for the fee request did not begin to run until 150 days after entry of the order. The Fund's request for fees was therefore timely.

**B.**

We turn next to the reasonableness of the fee award. We review a district court's award of fees for abuse of discretion and review a district court's factual determinations, "including [the court's] determination of an attorney's reasonable hourly rate and the number of hours he or she reasonably worked on the case," for clear error. Interfaith Cmty. Org., 426 F.3d at 703 n.5. We exercise plenary review over the legal standard that the district court used in calculating the award. See id.; Bell v. United Princeton Props., Inc., 884 F.2d 713, 718 (3d Cir. 1989).

Metro argues the District Court awarded an unreasonably high fee to the Fund. In addition to complaining that the hours awarded were excessive and the work was vaguely described, Metro contends that the District Court erred by not reducing the fee award so as to make it proportional to the amount of the underlying damages recovered. Since we have not previously ruled on whether a fee awarded pursuant to 29 U.S.C. § 1132(g)(2)(D) must be proportional to the amount of unpaid contributions recovered, we will focus our attention on that issue. Before we reach it, however, we will briefly address Metro's other claims.

**1.**

ERISA allows a prevailing plan to recover "reasonable attorney's fees." 29 U.S.C. § 1132(g)(2)(D). "The most useful starting point for determining the amount of a reasonable fee" is the lodestar calculation. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Under this well-settled approach, a court determines the reasonable number of hours expended on the litigation multiplied by a reasonable hourly rate. The product is a presumptively reasonable fee, but it may still require subsequent adjustment. Id. at 434; Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986). In this case, Metro does not

12

challenge the hourly rate charged but does suggest the hours claimed by the Fund, and awarded by the District Court, were excessive and insufficiently supported.

In requesting, challenging, and granting attorneys' fees, specificity is critical. A request for fees must be accompanied by "fairly definite information as to hours devoted to various general activities, e.g., partial discovery, settlement negotiations, and the hours spent by various classes of attorneys." Evans v. Port Auth., 273 F.3d 346, 361 (3d Cir. 2001). And "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly." Hensley, 461 U.S. at 433.

While the Fund's records describing the hours spent on various activities could have benefitted from added specificity, the detail they provided allowed the District Court to determine whether the costs claimed were unreasonable for the work performed. See Washington v. Phila. County Ct. Com. Pl., 89 F.3d 1031, 1037 (3d Cir. 1996) ("[S]pecificity should only be required to the extent necessary for the district court to determine if the hours claimed are unreasonable for the work performed.") (quotation marks and citation omitted). Moreover, we agree with the District Court that Metro's complaints of excessive hours were imprecise. See Bell, 884 F.2d at 720 ("[W]e emphasize that the adverse party's submissions cannot merely allege in general terms that the time spent was excessive."). Metro did not provide the District Court with adequate justifications to reduce the hours of the Fund's fees, and has not presented them to us. We will not disturb the court's conclusion that the number of hours expended on the successful 29 U.S.C. § 1145 action was reasonable.

Metro additionally argues that the District Court erred in not reducing the fee award in light of Metro's offer of judgment made pursuant to Rule 68 of the Federal Rules of Civil Procedure.[7]

_____

[7] Rule 68 provides that if judgment finally obtained is not more favorable than the offer of judgment, the offeree must pay the costs incurred after the offer. Rule 68 further provides that "[a]n offer not accepted shall be deemed withdrawn and evidence thereof

Courts have recognized that "fees accumulated after a party rejects a substantial offer provide minimal benefit to the prevailing party." Moriarty v. Svec, 233 F.3d 955, 967 (7th Cir. 2000). Metro, however, never presented the Fund with a "substantial offer." Metro initially offered to settle for the amount of unpaid contributions, but its offer did not include costs, fees, or interest incurred up to that point by the Fund. The Fund rejected the offer, indicating that it would be a breach of fiduciary duty for the Fund to waive interest on the unpaid contributions. Metro again failed to provide a substantial offer when it responded to this rejection—it *reduced* its offer by half.

We see no reason to overturn the District Court's finding of reasonable hours and reasonable rates, and we do not agree with Metro that its offer of judgment needed to factor into the award. The District Court fulfilled its obligation to consider carefully the reasonableness of the fee request and made no clear errors in its findings of fact.[8]

**2.**

Having concluded that the District Court did not err in its

_____

is not admissible except in a proceeding to determine costs." As applied to a fee-shifting statute, if the statute indicates attorneys' fees are part of the costs, then fees are included in Rule 68's post-offer costs. See Marek v. Chesny, 473 U.S. 1, 9 (1985) ("[A]ll costs properly awardable in an action are to be considered within the scope of Rule 68 'costs.' Thus, absent congressional expressions to the contrary, where the underlying statute defines 'costs' to include attorney's fees, we are satisfied such fees are to be included as costs for purposes of Rule 68."). Compare 29 U.S.C. § 1132(g)(2)(D) (allowing recovery of "fees and costs") with 42 U.S.C. § 1988(b) (allowing recovery of "fee[s] as part of the costs"). Metro does not argue the cost-shifting provision of Rule 68 applies to this case and the Fund does not challenge the admissibility of Metro's Rule 68 offer in this proceeding.

[8] The District Court's reduction of the Fund's fee request by $6,681.75 further demonstrates its thoroughness.

lodestar calculation, we now turn to whether the District Court should have downwardly adjusted the lodestar because the fee award was disproportionate to the amount of the unpaid contributions recovered. Although multiplying a reasonable number of hours by a reasonable rate produces a presumptively reasonable fee, that "does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward." Hensley, 461 U.S. at 434; see also Delaware Valley Citizens' Council, 478 U.S. at 565. The categories of considerations that justify adjusting the lodestar have changed over time. "Originally, it was contemplated that the lodestar could be adjusted upward or downward depending on a variety of factors, see Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161, 167-69 (3d Cir. 1973), but more recently the Supreme Court has sharply limited the number of factors which can be considered in adjusting the lodestar amount." Brytus v. Spang & Co., 203 F.3d 238, 242 (3d Cir. 2000). See City of Burlington v. Dague, 505 U.S. 557, 567 (1992) (holding courts may not adjust the lodestar amount because an attorney was retained on a contingent-fee basis); Blum v. Stenson, 465 U.S. 886, 898-99 (1984) (holding the novelty and complexity of a case are reflected in the lodestar and do not warrant post-lodestar adjustment); Id. at 899 (holding an upward adjustment to the lodestar for quality of service is only applicable in "exceptional" cases).

The question for us here—whether courts must downwardly adjust a 29 U.S.C. § 1132(g)(2)(D) fee award to keep it proportional to the damages—is as of yet unaddressed by the Supreme Court. The Supreme Court has, however, addressed disproportionate attorneys' fees awarded in the civil rights context. A four-Justice plurality of the Court in City of Riverside v. Rivera, 477 U.S. 561 (1986), refused to adopt a "rule of proportionality" for 42 U.S.C. § 1988 fees because such a rule "would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts" and thus would undermine "Congress' purpose in enacting § 1988." City of Riverside, 477 U.S. at 578 (Brennan, J., joined by Marshall, Blackmun, and Stevens, JJ.). Justice Powell cast the fifth vote to affirm the fee award of $

15

245,456.25 for a case in which plaintiffs were awarded $ 33,350 in damages. Id. at 585-86 (Powell, J., concurring in judgment). In the margin of his concurring opinion, Justice Powell stated "[i]t probably will be the rare case in which an award of *private damages* can be said to benefit the public interest to an extent that would justify the disproportionality between damages and fees reflected in this case." Id. at 586 n.3.

Justice Powell's footnote in City of Riverside seems to suggest courts should generally award only proportionate fees, and should consider the public interest served by the underlying case before awarding disproportionate fees. See, e.g., Moriarty v. Svec, 233 F.3d 955, 967-68 (7th Cir. 2000) (relying on Justice Powell's concurrence to support the proposition that "proportionality concerns are a factor in determining what a reasonable fee is"). In Cunningham v. City of McKeesport, 807 F.2d 49 (3d Cir. 1986), however, we determined Justice Powell's opinion did not mandate that courts adopt a "rule of proportionality." In that case, we stated we did not have to "[apply] the thrust of Justice Powell's somewhat enigmatic footnote" and require courts to "consider the extent to which the public interest was vindicated by the award if the fee sought is disproportionate to the damages awarded." Id. at 53. We explained,

> First, this interpretation represents at most the view of a lone Justice and was not endorsed by any of the other eight . . . . Second, we have doubts about Justice Powell's statement that only the rare case justifies disproportionate fee awards . . . . Finally, we consider application of Justice Powell's reasoning problematic . . . . In the absence of an explicit mandate, we are reluctant to begin the difficult task of developing standards by which we might incorporate proportionality principles into the attorney's fee calculus.

Id. at 53-54 (citation and footnote omitted); see also Washington, 89 F.3d at 1041.

Thus, we have rejected a rule of proportionality in civil rights cases. See, e.g., id. ("[A] court may not diminish counsel fees in a section 1983 action to maintain some ratio between the

fees and the damages awarded."). And, when asked to limit our rejection of proportionality to 42 U.S.C. § 1988 fee awards, we refused. In Northeast Women's Center v. McMonagle, the plaintiff brought a civil action under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68 ("RICO"). 889 F.2d 466, 468 (3d Cir. 1989). We declared that "nothing in the language or the legislative history of either § 1988 or [18 U.S.C.] § 1964(c) [providing fees for RICO litigation] . . . support[s] the application of a proportionality rule in the latter, but not the former." Id. at 474.[9]

The language of these previously interpreted statutes—42 U.S.C. § 1988(b) (". . . the court, in its discretion, may allow the prevailing party, other than the United States, a *reasonable attorney's fee* as part of the costs . . . ") and 18 U.S.C. § 1964(c) (plaintiff "shall recover threefold the damages he sustains and the cost of the suit, including a *reasonable attorney's fee . . .* ")—is similar to the ERISA provision at issue here (". . . the court shall award the plan . . . *reasonable attorney's fees* and costs of the action . . .").[10] See Dague, 505 U.S. at 562 (implying that case law construing the meaning of "reasonable" applies uniformly to fee-

_____

[9] We have previously been asked to consider the proportionality of attorney fee awards in the ERISA context. Bell v. United Princeton Props., Inc., 884 F.2d 713 (3d Cir. 1989). In Bell we considered, but did not resolve, the inverse of Metro's argument. The plaintiff in that case challenged a district court's reduction of a fee award, claiming the court improperly required proportionality between the attorneys' fees and the damages award. We commented that whether it would be an abuse of discretion for a court to apply a proportionality rule to ERISA fees "is not self-evident." Bell, 884 F.2d at 724. We did not reach the plaintiff's claim because "[t]he district court nowhere articulated that its reduction was based on a theory of proportionality." Id.

[10] The language of these provisions differ in one key respect: 42 U.S.C. § 1988(b) and 18 U.S.C. § 1964(c) allow for fees as part of costs, where as 29 U.S.C. § 1132(g)(2)(D) allows for fees and costs. This difference may have significance, see supra note 7, but it does not alter the meaning of "reasonable."

shifting statutes with similar language);  Indep. Fed'n of Flight Attendants v. Zipes, 491 U.S. 754, 759 n.2 (1989) (emphasizing that "fee-shifting statutes' similar language is a strong indication that they are to be interpreted alike") (quotation marks omitted); see also Smith v. City of Jackson, 544 U.S. 228, 233 (2005) ("[W]hen Congress uses the same language in two statutes having similar purposes, particularly when one is enacted shortly after the other, it is appropriate to presume that Congress intended that text to have the same meaning in both statutes.").  Nothing in the text of 29 U.S.C. § 1132(g)(2)(D) suggests that to be "reasonable," fees must be proportional, cf. 42 U.S.C. § 1997e(d)(1)(B)(i) (providing that a prisoner will not be awarded fees in a § 42 U.S.C. § 1988 action unless "the amount of the fee is proportionately related to the court ordered relief for the violation"), and Metro offers no argument specific to ERISA's mandatory fee structure to ease our longstanding concerns with requiring proportionality.  As we have previously explained with regard to another fee-shifting statute, "[h]ad Congress believed . . . that attorneys' fees should be awarded only in some proportion to the plaintiff's damages, it could have easily eliminated or modified the attorneys' fees provision."  Northeast Women's Ctr., 889 F.2d at 474.  We will "not impose such a change by judicial fiat."  Id.

Rejecting a proportionality rule with regard to § 1132(g)(2)(D) is consistent with the purpose of the provision.  ERISA provides "for appropriate remedies, sanctions, and ready access to the Federal courts" in order to "protect interests of participants in employee benefit plans and their beneficiaries."  See 29 U.S.C. § 1001(b).  When employers violate their obligations to make contributions as described by § 515 of ERISA, 29 U.S.C. § 1145, then § 502 of ERISA, 29 U.S.C. § 1132, provides a federal cause of action.

Originally, ERISA allowed courts to award attorneys' fees in their discretion.  In enacting the Multiemployer Pension Plan Amendments Act of 1980, Congress amended ERISA to address the "substantial number of employers" who "fail[] to make their 'promised contributions' on a regular and timely basis."  Advanced

18

Lightweight Concrete, 484 U.S. at 546.[11]  In the provisions of 29 U.S.C. § 1132(g)(2), Congress *required* courts to award attorneys' fees and other remedies to prevailing plans.  The Supreme Court has stated that "[t]he legislative history of these provisions explains that Congress added these strict remedies to give employers a strong incentive to honor their contractual obligations to contribute and to facilitate the collection of delinquent accounts."  Id. at 547.

"ERISA clearly assumes that [benefit plan] trustees will act to ensure that a plan receives all funds to which it is entitled."  Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc., 472 U.S. 559, 571 (1985).  When delinquencies are small, the cost of recovery may be disproportionate, and requiring proportionality would, in effect, discourage plans from taking their claims to federal courts.  Moreover, § 1132(g)(2) was enacted to encourage employers to make timely contributions, assist plans in their recovery of delinquent contributions, and discourage excessive litigation by defendants.  See Advanced Lightweight Concrete, 484 U.S. at 546; JPR, 136 F.3d at 803-04.  Funds are burdened by employers who needlessly extend or complicate litigation for small delinquencies just as they are burdened by employers who needlessly extend or complicate litigation for larger delinquencies.  We do not read § 1132(g)(2) to limit the fee award of a plan suffering the former situation simply because the amount of underlying recovery is less.

---

[11]  A Senate report regarding the amendments to ERISA recognized the "'[f]ailure of employers to make promised contributions in a timely fashion imposes a variety of costs on plans.  While contributions remain unpaid, the plan loses the benefit of investment income . . . . [C]osts are incurred in detecting and collecting delinquencies.  Attorneys fees and other legal costs arise in connection with collection efforts.'"  Advanced Lightweight Concrete, 484 U.S. at 546 n.12 (quoting Senate Committee on Labor and Human Resources, 96th Cong., 2d Sess., S. 1076, The Multiemployer Pension Plan Amendments Act of 1980:  Summary and Analysis of Consideration 43 (Comm. Print 1980)) (emphasis removed).

19

We are not alone in concluding that requiring proportionality would neglect the language of ERISA and frustrate its purpose. See Bldg. Serv. Local 47 v. Grandview Raceway, 46 F.3d 1392, 1401 (6th Cir. 1995) ("[I]n ERISA cases, there is no requirement that the amount of an award of attorneys' fees be proportional to the amount of the underlying award of damages"); Bd. of Trs. of the Hotel & Rest. Employees, Local 25 & Employers' Health & Welfare Fund v. Madison Hotel, Inc., 43 F. Supp. 2d 8, 14 (D.D.C. 1999) (adopting the view of the Court of Appeals for the Sixth Circuit that there is no proportionality requirement); see also Operating Eng'rs Pension Trusts v. B&E Backhoe, Inc., 911 F.2d 1347, 1355 (9th Cir. 1990) (refusing to adopt a "'de minimus' rule to bar litigation where only a few hours trust contribution is owing"). We join these courts to the extent they reject a proportionality rule for mandatory fees awarded pursuant to ERISA.[12] In 29 U.S.C. § 1132(g)(2)(D), there is no ratio of reasonability to which fees and damages must conform.

**3.**

Before we conclude, we address our dicta in Ursic v.

---

[12] To support a proportionality rule, Metro cites to Moriarty v. Svec, 233 F.3d 955 (7th Cir. 2000), which states "disproportionality is not determinative . . . [but] the district court's fee order should evidence increased reflection before awarding attorney's fees that are large multiples of the damages recovered or multiples of the damages claimed." Id. at 968; see also id. at 967-68 (declaring "proportionality concerns are a factor in determining what a reasonable fee is"). In that case, the Court of Appeals for the Seventh Circuit relied on Justice Powell's concurrence in City of Riverside v. Rivera, 477 U.S. 561 (1986) for its understanding of the relevance of proportionality. See Moriarity, 233 F.3d at 967-968 (citing City of Riverside, 477 U.S. at 585-86 & n.3). We note that our interpretation of the import of Justice Powell's concurrence, as described in Cunningham v. City of McKeesport, 807 F.2d 49, 53-54 (3d Cir. 1986), apparently differs from the interpretation of the Court of Appeals for the Seventh Circuit.

Bethlehem Mines, 719 F.2d 670 (3d Cir. 1983). In that case, we declared that "[w]hen monetary damages are awarded, the trial court must consider the relationship between the fee award and the amount of recovery . . . both in the context of determining the lodestar and in determining whether to adjust the fee upward or downward." Id. at 677; see also Bell, 884 F.2d at 723 n.9 (describing language in Ursic as dicta). Ursic's approach to fee awards is consistent with the Supreme Court's declaration that "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" See Farrar v. Hobby, 506 U.S. 103, 114 (1992) (quoting Hensley, 461 U.S. at 436). As we have explained, comparing damages awarded with the amount of damages requested "may be one measure of how successful the plaintiff was in his or her action, and therefore 'may be taken into account when awarding attorneys' fees.'" See Washington, 89 F.3d at 1042 (quoting Abrams v. Lightolier, 50 F.3d 1204, 1222 (3d Cir. 1995)). Because the focus is on the "degree of success," and not success as defined in absolute numbers, this comparison does not necessitate proportionality. We are aware, however, that our language in Ursic could be interpreted to support a proportionality rule, and, although Metro does not rely on that case, we briefly discuss how later Supreme Court cases prevent such an interpretation.

In Ursic, we stated that for a fee to be reasonable, "there must be a correlation between the 'hours worked' and 'the total recovery.'" Ursic, 719 F.2d at 677. We went on to state that "[t]he mere fact that a fee is authorized by statute does not empower the courts to set extravagant or disproportionate fees. The key word is 'reasonable' and that means in relation to the main litigation." Id. at 678.[13] It is clear that Ursic remains good law insofar as it suggests courts consider "billing judgment" in determining

---

[13] In Ursic, we established the factors a court must consider in determining *whether* to award fees pursuant to 29 U.S.C. § 1132(g)(1). Those factors are inapplicable to a fee award mandated by 29 U.S.C. § 1132(g)(2). See Bd. of Trs. of Trucking Employees of N. Jersey Welfare Fund, Inc. v. Centra, 983 F.2d 495, 508-09 (3d Cir. 1992).

reasonable hours.  See <u>Hensley</u>, 461 U.S. at 434.  To determine whether the fee request excludes hours that are "excessive, redundant, or otherwise unnecessary," a district court can consider the damages sought and obtained.  See <u>id.</u>  But insofar as we stated in <u>Ursic</u> that the amount of damages recovered should be considered identically in determining whether an attorney's hours are reasonable *and* whether the lodestar needs adjustment, the Supreme Court has since indicated that this kind of "double counting" is inappropriate.  See <u>Dague</u>, 505 U.S. at 562-63; <u>Del. Valley Citizens' Council</u>, 478 U.S. at 565; <u>Blum</u>, 465 U.S. at 899-900.

More importantly, any implication in <u>Ursic</u> that *all* fees must be proportional to be reasonable is inconsistent with <u>City of Riverside v. Rivera</u>.  As explained above, in that case, a plurality refused to require proportionality in awarding a "reasonable attorney's fee" for successful civil rights litigation.  <u>City of Riverside</u>, 477 U.S. at 576 (plurality opinion).  Justice Powell joined the plurality in affirming the disproportionate fee award.  <u>Id.</u> at 585 (Powell, J., concurring in judgment).  <u>City of Riverside</u>, therefore, holds that reasonable fees can, at least in certain circumstances, be disproportionate with the amount of underlying relief.  See <u>Marks v. United States</u>, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.") (quotation marks and alterations omitted).

In light of the text and purpose of 29 U.S.C. § 1132(g)(2), Supreme Court case law, and our precedent, we hold that the District Court did not err in refusing to adjust downwardly the lodestar calculation simply because the fee award was disproportionate to the damages award.

## III.

For the foregoing reasons, we will affirm the District Court's award of attorneys' fees to the Fund in the amount of $28,623.14.